COMMONWEALTH *vs.* KEVIN SULLIVAN.

No. 00-P-1110.

Hampshire. January 15, 2002. - September 10, 2002.

Present: JACOBS, GILLERMAN, & McHUGH, JJ.

*Obscenity,* Dissemination of obscene matter to minor, Community standard. *Constitutional Law,* Obscenity.

Evidence at the jury-waived trial of charges of disseminating, or possessing with intent to disseminate, matter harmful to minors, G. L. c. 272, § 28, was sufficient to permit the judge to conclude, beyond a reasonable doubt, that magazines seized by police were those the defendant had in his possession with the requisite intent when he showed them to several young boys [778-779]; moreover, the evidence was sufficient to support a conclusion that the defendant's showing the magazines to the boys could not possibly meet the standards of any of the Commonwealth's counties and thus that they necessarily fell below those prevailing in the county in which the defendant's displays occurred [779-781].

INDICTMENTS found and returned in the Superior Court Department on September 3, 1997.

The cases were heard by *Mary-Lou Rup,* J.

*Michele R. Moretti* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. During the summer of 1997, the defendant frequently drove his car to Snow's Pond in Ware, Hampshire County, disrobed and masturbated while looking at magazines he retrieved from the car's trunk. Sometimes he carried on that activity under the gaze of young boys who happened to be in the area fishing, riding bicycles, or just playing. When his behavior was brought to the attention of police, the defendant

was arrested and charged with a variety of offenses.[1] Following a jury-waived trial, he was convicted of three counts of open and gross lewdness, see G. L. c. 272, § 16, and two counts of disseminating, or possessing with intent to disseminate, matter harmful to minors. See G. L. c. 272, § 28. On this appeal, he takes no issue with his convictions for lewd behavior. Instead, he asserts that the evidence was insufficient to support his conviction for violation of c. 272, § 28. We disagree.

Viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the material evidence was to the effect that eleven year old Joe,[2] often accompanied by his twelve year old brother, Bob, and their friends, Sam, age unknown, and Dave, age nine, spent large parts of the summer of 1997 at Snow's Pond. Other boys of similar age often accompanied them. The boys frequently saw the defendant sitting or lying on a lawn chair outside of his parked car in a wooded area near the pond.

Many times when the boys saw him, the defendant was unclothed. Indeed, on one occasion, the defendant was fully clothed when the boys arrived at his car but shed his clothing soon thereafter. When asked by one or more of the boys why he was naked, the defendant responded by saying something to the effect that he was getting vitamins from the sun. During their encounters, the defendant often offered the boys cigarettes, which they accepted.

Sometimes the youngsters saw the defendant looking at magazines containing photographs of unclothed men and women. On a number of occasions, one or more of the boys saw the defendant masturbate. Sometimes he did so while naked, sometimes while wearing a pair of shorts, and sometimes while

---

[1]The initial charges were open and gross lewdness (five counts), posing or exhibiting a child in the state of nudity (two counts), disseminating, or possessing with intent to disseminate, material harmful to minors (two counts), and assault and battery (two counts). At the close of the Commonwealth's case, the trial judge dismissed all but three counts of open and gross lewdness and the two counts of disseminating, or possessing with intent to disseminate, material harmful to minors. The Commonwealth did not object contemporaneously, nor does it object here, to those dismissals.

[2]Throughout this opinion, pseudonyms are used for the youngsters.

looking at the magazines.[3] The boys often saw the defendant retrieve the magazines from beneath the front seat of his car or, more commonly, from a plastic bag he kept in the car's trunk.

A number of times, the boys asked the defendant if they could look at his magazines. The defendant obliged by showing them the magazine at which he was then looking or by opening the trunk and retrieving magazines from the plastic bag or by inviting the boys to open the trunk themselves and get magazines from the bag the trunk contained.

One afternoon late in the summer, Joe's father went to the pond in search of Joe. On his arrival, he saw Joe sitting on the trunk of the defendant's car smoking a cigarette while his friends sat nearby. As one might expect, Joe's father reacted to his observations with some energy and learned from Joe that the defendant was the source of the cigarette Joe had been smoking. When Joe's father asked the defendant, who was sitting nearby reading a newspaper, whether he was in fact the source of Joe's cigarette, the defendant said that he was.

After his discussion with the defendant, Joe's father returned to his house, Joe in tow, called Ware police, and told them that the defendant was at the pond giving cigarettes to young children. Soon thereafter, the Ware police chief and another officer went to the pond, found the defendant, and questioned him about distribution of cigarettes. The defendant denied having done so. The chief then asked for and received the defendant's permission to look through the defendant's car which, as usual, was parked nearby. Among other things, the ensuing search revealed three magazines in a white plastic bag in the trunk.[4] One of the magazines bore a cover entitled "Friction" and the other two were coverless. All three were devoted to close up, clinically explicit photographs of men and women engaging in assorted forms of sexual intercourse and amounted essentially

---

[3]This was not an activity in which the defendant engaged while unaware that he was being observed. One of the boys testified at trial that the defendant once picked up a magazine, began to masturbate and called out to him to watch.

[4]The defendant later sought suppression of the magazines, claiming that he had not in fact consented to the search. The motion was denied, and he does not press the claim here.

to photographic collages of body parts and activities lightly veneered with text of no particular consequence.

An ensuing police investigation produced the boys' accounts of their observations and their exposure to the magazines. The indictments and trial mentioned above quickly followed. At the close of the Commonwealth's case, the defendant moved to dismiss the dissemination counts on grounds that the evidence was insufficient to support them. More particularly, the defendant maintained, as he does here, that the evidence was insufficient to permit the judge to conclude that the magazines police retrieved from the trunk of his car were the same magazines the boys claimed he had shown them. Even if they were, the defendant argued, the evidence was insufficient to support a conclusion that showing the magazines to the boys violated G. L. c. 272, § 28. The trial judge rejected both contentions. We reject them as well.

Addressing the defendant's contentions in the order just recited, his assertion that the evidence was insufficient to permit the judge to conclude that the magazines seized by police were those he had shown the boys rests chiefly on the boys' testimony that the defendant had shown them "Playboy" magazines. He cites several cases holding that Playboy magazine is neither obscene nor unsuitable for display to minors. See, e.g., *Playboy Entertainment Group, Inc.* v. *United States*, 918 F. Supp. 813, 819 (D. Del. 1996). Because police found no copies of Playboy magazine in the trunk of the defendant's car and because the boys offered no testimony that they had seen the magazines police actually found, the defendant urges that there is no evidentiary nexus between what the police found and what the boys testified he had shown them.

The defendant's argument encounters two insurmountable obstacles. First, the evidence supported a conclusion that the boys used the term "Playboy" to describe magazines strikingly similar to those found in the defendant's possession. For example, Dave, who had turned ten just before trial, testified that the magazines contained naked males and all of their body parts including their penises and other "private parts," and that the magazines contained "disgusting" pictures of naked men and women revealing the women's "whole body" and the men's

"penises and their stuff." The evidence thus supported an inference that, to young boys likely unfamiliar with "Friction" or its counterparts, "Playboy" was a generic label used for any magazine containing sexually explicit material.

Second, and more important, the indictments alleged not only that the defendant disseminated matter harmful to minors but also that he possessed such material with the intent to do so. That, too, is activity prohibited by G. L. c. 272, § 28. And the evidence amply supported a conclusion that the magazines police found were intended for display to the boys even if the defendant had not previously shown them their contents. As stated, police found the magazines in the trunk of the defendant's car, and the boys testified that that is where the defendant kept the magazines they saw during the course of the summer. The police found the magazines in a plastic bag. The boys testified that was the kind of container in which the defendant kept the magazines he displayed to them. The defendant gave the boys cigarettes and actively invited them to watch him during his activities. That evidence was sufficient to allow the trial judge to conclude beyond a reasonable doubt that the defendant had the magazines in his possession with the requisite intent.

The second prong of the defendant's attack on the sufficiency of the evidence focuses on the definition of "matter harmful to minors," distribution of which is prohibited by c. 272, § 28, as amended by St. 1982, c. 603, § 2.

> "[M]atter is harmful to minors if it is obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors."

G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 6.[5]

The defendant does not contend that the evidence was insuf-

---

[5]The defendant makes no claim that the statute is unconstitutional, nor does he claim that it would be unconstitutional to prohibit display to minors of his copy of "Friction" or the other two magazines.

ficient to permit the trial judge to conclude that the magazines had the characteristics described in sections (1) and (3) of the definition. As to the second component, however, the defendant points out that, before it rested, the Commonwealth introduced no testimony regarding Hampshire County standards regarding material suitable for display to minors.[6] Moreover, the trial judge did not live in Hampshire County.[7] The defendant therefore claims that the judge had no evidentiary or experiential basis on which to determine that showing his magazines to minors was, or would be, "patently contrary" to Hampshire County standards.

None of our cases and no case decided by the Supreme Judicial Court addresses the precise point the defendant raises. In cases dealing with obscene material a number of years ago, however, the Supreme Judicial Court held that expert testimony regarding community standards — there Statewide — was not required in order to carry the Commonwealth's burden, *Commonwealth* v. *Trainor*, 374 Mass. 796, 799 (1978); *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 893 (1983), although the court observed that an election not to produce such testimony exposes the Commonwealth to the risk that "the trier of fact will be unable to arrive at a conclusion concerning [the relevant] standard[]." *Commonwealth* v. *Trainor*, 374 Mass. at 800. We reached the same conclusion in a case decided after the obscenity statute was amended by substitution of "countywide" for Statewide standards. *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 23 Mass. App. Ct. 1017, 1018 (1987) (construing G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 7). Nevertheless, the risk of nonpersuasion, although real, see *United States* v. *2,200 Paper Back Books*, 565 F.2d 566, 570-571 (9th Cir. 1977), is a risk, no more and no less. Failure to carry the burden of persuasion is not an inevitable consequence of a trial devoid of testimony, expert or other, regarding county standards. See generally *Lewis* v. *State*, 726 N.E.2d 836, 841

---

[6]Some such evidence was presented by the Commonwealth through cross-examination of witnesses the defendant called. Nevertheless, the sufficiency of the evidence must be measured as of the close of the Commonwealth's case. *Commonwealth* v. *Latimore*, 378 Mass. at 677-678.

[7]The trial judge acknowledged in a posttrial memorandum that she did not live in Hampshire County.

(Ind. Ct. App. 2000) (under similar Indiana statute prohibiting dissemination of harmful matter to minors, the State was not required to introduce evidence of prevailing community standards).

The cited cases do not entirely resolve the present problem because the rationale for the courts' holdings in those cases was that "the trier of fact may draw on his [or her] own knowledge of normative views in his [or her] own community in applying statutorily prescribed community standards." *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391, 394 (1976). Here the trial judge was neither from Ware nor from Hampshire County.[8] Consequently, the defendant asserts, the rationale is inapplicable and expert testimony was required.

There is, to be sure, some force to the defendant's argument, for standards governing sexual material appropriate for display to minors no doubt vary somewhat from county to county throughout the Commonwealth. Indeed, that is the premise for the statute's focus on county standards. Beneath county variations, though, lies a baseline, perhaps defined by the standards prevailing in the county with the most permissive views on the subject. Wherever the precise location of that baseline, our own review of the magazines and their nearly exclusive focus on photographs of body parts engaged, or about to engage, in sexual congress leads us to conclude that no reasonable and disinterested observer anywhere in the Commonwealth would think them suitable for display to children. Accordingly, we conclude that they could not possibly meet the standards of any of the Commonwealth's counties and thus that they necessarily fell below those prevailing in Hampshire County at the time the defendant's displays occurred.

*Judgments affirmed.*

---

[8]The judge was careful to note her obligation to find that the magazines' content was inconsistent with Hampshire County standards for what was suitable for display to minors, not her own standards. She also carefully articulated her understanding that she was required to acquit the defendant if she was unable to decide whether or not the magazines were inconsistent with those standards.