COMMONWEALTH *vs.* MARK A. ROLLINS.

No. 02-P-406.

Berkshire. April 14, 2003. - December 9, 2003.

Present: LAURENCE, McHUGH, & COHEN, JJ.

*Obscenity,* Knowing dissemination of obscene matter, Dissemination of obscene matter to minor. *Constitutional Law,* Obscenity. *Evidence,* Obscenity.

At the trial of a criminal complaint charging the defendant with disseminating obscene matter in violation of G. L. c. 272, § 29, the evidence was sufficient to show that the defendant disseminated the material within the meaning of G. L. c. 272, § 31, where there was evidence that the defendant purposely dropped material from his car intending and expecting that the material would be seen by individuals whom he knew were in the area [156-158]; further, the material was obscene as that term is defined in § 31, where the material (which consisted of advertisements for "adult" videos available at identified New England retail outlets) appealed solely and numbingly to the obsessively sexual (i.e., prurient) interest of the average person in the county where it was found, and where the manner in which the defendant displayed the material was patently offensive [158-159].

The evidence at the trial of a criminal complaint charging the defendant with disseminating matter harmful to a minor in violation of G. L. c. 272, § 28, was insufficient to show that the defendant "disseminated" the matter to a minor, where there was no evidence that any of the children waiting at a school bus stop, or any other child, saw the content of the sexually explicit paper that the defendant threw from his car 200 to 300 feet from the bus stop, or that the defendant intended any of the children to see it. [159-160]

COMPLAINT received and sworn to in the North Adams Division of the District Court Department on June 12, 2000.

The case was heard by *Rita S. Koenigs,* J.

*William A. Rota* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. After a trial before a District Court judge sitting

without a jury, the defendant was convicted of three counts of disseminating obscene matter, G. L. c. 272, § 29, and one count of disseminating matter harmful to a minor, G. L. c. 272, § 28.[1] On appeal, he claims that the evidence was insufficient to support the convictions. Insofar as the charge involving a minor is concerned, we agree. Therefore, we reverse that judgment but affirm the remainder.

*Background.* As is required in cases where a defendant claims insufficiency of the evidence, we review the record in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Viewed in that fashion, the evidence reveals some unusual events.

Those events began on Friday, May 26, 2000, when Jane[2] was walking her dog on Stafford Hill Road in Cheshire. At least in the area where Jane was walking, Stafford Hill Road is sparsely populated and only partially paved. As she and the dog walked along, Jane turned at one point and saw an unfamiliar "greenish" colored car parked at the edge of the road behind her. The car had not been there when she had passed the area moments earlier.

As Jane continued her walk, the greenish car drove by her and moved on to some unknown destination. Ultimately, Jane and the dog turned and began to retrace their steps toward home. As they passed the area where Jane had seen the parked car, she noticed some papers lying on ground that had been bare on the outbound leg of her walk. Her cursory examination of the papers revealed them to be pages torn from a magazine containing what she described as "[p]ornographic" material.

Jane left the papers in place, went home, and told her husband

---

[1] The defendant was also convicted of three counts of littering, G. L. c. 270, § 16; three counts of disorderly conduct, G. L. c. 272, § 53; and three counts of annoying or accosting a person of the opposite sex, G. L. c. 272, § 53. All of these convictions were placed on file with the defendant's consent. Although he does not appeal from the littering convictions, he claims that the evidence was insufficient to support the other filed convictions. However, since he agreed to have the convictions placed on file without imposition of a sentence, his right to appeal is suspended until sentence is imposed, see *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975); *DuPont* v. *Superior Ct.*, 401 Mass. 122, 123 (1987), and we do not now consider his appeals from those convictions.

[2] Throughout, we use pseudonyms for all witnesses.

of the incident. The next day, he retrieved one of the papers and delivered it to State police. That incident forms the first of the three obscenity charges on which the defendant was prosecuted.

Two days later, on May 28, Mary, Jane's sister-in-law and neighbor on Stafford Hill Road, opened the blinds to her bedroom window at approximately 8:00 A.M. As she did, she saw a "turquoise" car driving down the street. Upon approaching her house, the car slowed to a speed of approximately five or ten miles per hour. In front of her house, the car's driver "slowly lifted his arm and . . . stuck it out the window and let go of the material [he was holding in his hand]. He didn't throw it quickly."

Having heard of the incident involving Jane, Mary left her house to examine the deposited materials as they lay on the ground near the mailbox at the end of her driveway. Those materials, too, turned out to be magazine pages containing what Mary called "pornographic" material.

Mary picked up one page and returned to the house to show it to her husband. He then went out to the street and gathered up some additional pages, which were strewn in the road from the front of his house to the next house. State police were summoned. Upon their arrival, they found in the road twelve other pages of material that appeared to have come from the same magazine. Mary and her husband gave police the pages they had recovered, two of which they were able to identify at trial. All of the pages recovered that day came from the same magazine that produced the material Jane had seen two days earlier. The May 28 incident was the basis for the second of the three obscenity charges.

Two days after that, Joseph was walking with his daughter, Frances, along Richmond Hill Road where he lived a short distance from Jane and Mary. Frances was walking approximately forty feet ahead of Joseph when she suddenly pointed to the ground and cried out, "There's something here you should see." Upon investigation, Joseph observed what he described as a "pornographic" videocassette box in the road directly across from his house. Joseph, too, summoned police, who collected the box and later found that it contained the

defendant's fingerprints.[3] No charges were brought against the defendant in connection with the box.

Finally, on June 8, 2000, Joseph's wife, Sally, was waiting with Frances and two twelve year old neighborhood boys at the school bus stop near the intersection of Richmond Hill and Stafford Hill Roads. She spotted what she described as a "teal"colored car driving along Stafford Hill Road. Sally had seen the car in the neighborhood previously and, aware of the events just recounted, had recorded its license number.

As the car drove by the bus stop, the driver slowed and looked directly at Sally and Frances before moving on. Sally continued to watch it. As the car reached a point about 200 to 300 feet beyond the bus stop, she saw the driver throw a piece of paper out of the window. Before investigating, Sally waited a few minutes for the bus to arrive and the children to board. After the bus left, Sally proceeded down the street, looked at the paper and saw that its contents were sexually explicit. She then called the police, who gathered up the paper and placed it with the others they had obtained earlier. That incident led to the third obscenity charge and to the charge involving matter harmful to minors.

Evidence was overwhelming that the defendant drove the car, whatever its precise color, and deposited all of the material in the neighborhood. No doubt as a consequence, the defendant did not claim at trial that the deliveries and deposits were the handiwork of someone else. Instead, as noted, he claimed, and claims here, that the evidence was insufficient to support a conclusion that he "disseminated" anything, that the materials were obscene, or that he disseminated anything harmful to a minor.

*Obscenity convictions.* Taking the defendant's claims in order, G. L. c. 272, § 31, as amended by St. 1974, c. 430, § 12, defines "disseminate," for purposes of the obscenity statutes, to mean "import, publish, produce, print, manufacture, distribute, sell, lease, exhibit or display." See *Commonwealth* v. *Plank*, 378 Mass. 465, 467 (1979). We have said that those terms "must be given their usual and accepted meaning so long as [that

---

[3]A later search of the defendant's house produced the videocassette the box once housed.

meaning] is consistent with the statutory purpose." *Commonwealth* v. *Lotten Books, Inc.*, 12 Mass. App. Ct. 625, 628 (1981). There is no doubt that the statute requires purposeful activity. Cf. *Commonwealth* v. *Rosenberg*, 379 Mass. 334, 338-339 (1979).

In the face of that broad definition, the defendant asserts that, although various neighborhood residents undoubtedly looked at the contents of the material he delivered, the fact that the defendant threw or left items which were later found by others does not constitute distribution. Indeed, in the defendant's view, the evidence was insufficient to show that he made a conscious effort to distribute, exhibit, or display the material to any person. We do not agree.

This is not a situation in which a garbage bag fell from a truck en route to the dump and split open to reveal pornographic materials; nor is it a situation where such materials, abandoned deep in the outback, were discovered by adventurous hikers. Instead, the evidence was sufficient to permit the judge to conclude beyond a reasonable doubt that, in each of the three instances giving rise to the charges against the defendant, he purposely dropped material from his car intending and expecting that the material would be seen by individuals whom he knew were in the area. The pages of material involved in the first two incidents, incidents separated by two days, came from the same magazine, a circumstance inconsistent with the notion that they were simply the byproduct of careless disposal. Indeed, that the pages were torn from the magazine before being deposited on the street increased the likelihood residents would see at least some of their content and decreased the likelihood that the defendant was simply engaged in thoughtless littering. The repetitive nature of the incidents (namely, that the deposits did not occur on a main thoroughfare, that they occurred in the vicinity of people the defendant observed or houses he must have known were occupied, and that he chose to deposit the pages in populated locations instead of the abundant areas of nearby woodland — to say nothing of his own wastebasket) was further evidence that the defendant was animated by a purposeful desire to exhibit or display the content of the material to others. In sum, the evidence was sufficient to support a

conclusion that his success in doing so was a "dissemination" embraced by G. L. c. 272, § 31.

That brings us to the second issue, whether the content of the magazine pages the defendant deposited on the street on May 26, May 28, and June 8, was "obscene" as the term "obscene" is defined in G. L. c. 272, § 31.[4] Conceding that the materials were sexually explicit, the defendant nevertheless maintains that they did not meet the statutory definition of obscenity. After independently reviewing the magazine pages to determine whether they are constitutionally capable of supporting the obscenity judgment, see *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 284-286 (1964); *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 508-509 & n.27 (1984); *Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 688-691 (1989); *Commonwealth* v. *Bean*, 435 Mass. 708, 714-715 (2002), we disagree.

The pages chiefly advertise "adult" videos available at identified New England retail outlets. To help prospective customers understand what their money will buy, the pages contain color photographs of scenes supposedly found in the videos. Virtually all of the photographs show sexual organs — and some show nothing but sexual organs — engaged in widely varied forms of intercourse. The textual component of the material consists chiefly of vernacular descriptions of the pictures accompanied by promises that more of the same is available in the videos themselves.

---

[4]General Laws c. 272, § 31, as amended by St. 1982, c. 603, § 7, defines obscene material as material that, taken as a whole,

> "(1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed;

> "(2) depicts or describes sexual conduct in a patently offensive way; and

> "(3) lacks serious literary, artistic, political or scientific value."

That definition is at least as speech protective as the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights require, see *Miller* v. *California*, 413 U.S. 15, 24 (1973); *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 893 (1983), and no challenge to the statute's constitutionality is raised here.

Taken as a whole, the material "appeal[s] solely and numbingly to the obsessively sexual (i.e. prurient) interest of the average person" in the county where it was found. *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 19 Mass. App. Ct. 573, 578 n.6 (1985), *S.C.*, 397 Mass. 197 (1986). There is no suggestion that the judge was unfamiliar with county-wide standards, and no expert testimony or lay testimony on the subject of those standards was necessary.[5] See *Commonwealth* v. *Trainor*, 374 Mass. 796, 799-800 (1978); *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 893 (1983); *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1)*, 389 Mass. 902, 905-906 (1983); *Commonwealth* v. *Sullivan*, 55 Mass. App. Ct. 775, 780-781 (2002). Likewise, the record supports a constitutionally permissible conclusion that the manner in which the defendant displayed the material was patently offensive. In making that judgment, context is important; the witnesses' involuntary encounters with the material after the defendant purposely used it to festoon their residential neighborhood was a factor entitled to significant weight in forming the obscenity judgment. See *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1)*, 397 Mass. 197, 198-199 (1986). See generally *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 112-113 (1973) (Brennan, J., dissenting). Finally, whatever value the material may conceivably have had, that value was neither serious nor "literary, artistic, political or scientific." In sum, on this record, a finding that the material meets the statutory definition of obscenity violates no constitutional right the defendant possesses.

*Dissemination to minors.* Turning to the charge involving minors, G. L. c. 272, § 28, prohibits dissemination to minors of certain sexually explicit material and possession of such material with the intent to disseminate it to minors. The prohibited material is defined in G. L. c. 272, § 31. Our own independent review of the paper the defendant threw from his car window on June 8, 2000, persuades us that the trial judge, as a fact

---

[5]At least that is so when the allegedly obscene material is available for examination both by the trier of fact and the appellate court. Compare, e.g., *Commonwealth* v. *Plank*, 378 Mass. at 469. The defendant, of course, may freely offer expert testimony on the subject, see, e.g., *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 895 (1983), although none was offered here.

finder, was warranted in her conclusion, implicit in the judgment of conviction, that the paper's content was within the statutory prohibition. See *Commonwealth* v. *Sullivan*, 55 Mass. App. Ct. at 781.

That said, however, none of the children at the bus stop, nor any other child, saw the content of the paper. That content was, therefore, not "disseminated" to them. Moreover, we do not think that the evidence is sufficient to support beyond a reasonable doubt a finding that the defendant intended the children to see it. When the defendant saw the children as he drove by them early in the morning on June 8, they were in the company of an adult, Sally, standing at a school bus stop. Nothing about the manner in which the group had gathered suggested that the children would be freely wandering up and down the street or otherwise moving anywhere very far from Sally until the bus arrived and they got on. The fact that, under those circumstances, the defendant drove well past the bus stop before throwing his material out of the window, coupled with the absence of any prior effort to target children with his deposits, produces a strong and unrebutted suggestion that he did not intend to display the material to youngsters.

On the conviction of violation of G. L. c. 272, § 28, the judgment is reversed and the finding is set aside. As to the three convictions of violating G. L. c. 272, § 29, the judgments are affirmed.

*So ordered.*