COMMONWEALTH vs. FRANK S. MILITELLO.

No. 04-P-829.

Berkshire. August 5, 2005. - May 24, 2006.

Present: GELINAS, BROWN, & BERRY, JJ.

*Obscenity,* Dissemination of obscene matter to minor. *Constitutional Law,* Obscenity. *Open and Gross Lewdness and Lascivious Behavior. Statute,* Construction. *Alcoholic Liquors. Practice, Criminal,* Instructions to jury. *Delinquent Child. Intoxication. Words,* "Control."

Evidence at a criminal trial was not sufficient to warrant the defendant's convictions of dissemination of matter harmful to minors, in violation of G. L. c. 272, § 28, where nothing in the testimony suggested that the photographs at issue depicted or described sexual conduct in any way that would render them obscene under the meaning of G. L. c. 272, § 31 [329-332]; and where the testimony did not permit a fact finder to determine, beyond a reasonable doubt, that the pictures, taken as a whole, appealed predominantly to the prurient interest of minors or lacked serious literary, artistic, political, or scientific value to minors [332-333].

Evidence at a criminal trial was not sufficient to convict the defendant of open and gross lewdness, in violation of G. L. c. 272, § 16, where the testimony, considered as a whole, demonstrated that the defendant's act of exposing himself did not in fact alarm or shock any of the witnesses to the exposure. [333-334]

Although the evidence at the trial of criminal complaints charging the defendant with furnishing alcohol to minors in violation of G. L. c. 138, § 34, was sufficient to establish that the defendant "controlled" the property on which he had given the minors beer to drink, as required by the statute [335-336], the judge's instructions to the jury, which did not allow the jury to consider evidence of the defendant's own intoxication when determining whether he possessed the specific intent to furnish alcohol, constituted reversible error [339-341].

At the trial of criminal complaints charging the defendant with contributing to the delinquency of a child, in violation of G. L. c. 119, § 63, any error in the judge's instructions to the jury concerning the predicate act of delinquency or the knowledge element of the crime did not create a substantial risk of a miscarriage of justice [337-339]; further, the judge did not err in denying the defendant's request to instruct the jury to consider the evidence of the defendant's own intoxication when determining whether he possessed the necessary mens rea, where the crime did not require proof of specific intent [341].

COMPLAINT received and sworn to in the North Adams Division of the District Court Department on August 6, 2002.

COMPLAINT received and sworn to in the Berkshire County Division of the Juvenile Court Department on September 24, 2002.

The cases were tried before *Paul E. Perachi*, J., sitting on assignment.

*John M. Thompson* for the defendant.

*Raymond J. Jacoub*, Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Frank S. Militello, appeals from his convictions by a District Court jury of (1) four counts of contributing to the delinquency of a child, in violation of G. L. c. 119, § 63; (2) one count of open and gross lewdness, in violation of G. L. c. 272, § 16; (3) four counts of disseminating matter harmful to minors, in violation of G. L. c. 272, § 28; and (4) four counts of furnishing alcoholic beverages to persons under twenty-one years of age, in violation of G. L. c. 138, § 34.

On appeal the defendant argues that (1) the jury instructions with respect to the charges of disseminating matter harmful to minors and contributing to the delinquency of a child were fatally flawed, and the failure to give a requested intoxication instruction requires reversal of all counts; (2) the evidence was insufficient to support any of the charges other than contributing to the delinquency of a child; (3) the complaints for contributing to the delinquency of a child failed to allege the requisite scienter element; (4) the cumulative impact of these errors warrants reversal; and (5) trial counsel was ineffective.

We set forth the evidence in the light most favorable to the Commonwealth, although many of the facts are, in the main, uncontroverted. The defendant resided in a house in Cheshire that he shared with M.S., among others. In June of 2002, M.S. hosted a birthday party for his older son, Tim, who was turning thirteen the next day. The defendant was among the twenty or so guests who attended, including adults and children. As the party was breaking up, Tim, his brother Gabriel, Doug, and

Brian,[1] the latter three aged nine, twelve, and thirteen years, respectively, walked to an area known as "the Grove" to camp out. The area is surrounded by trees and contains a hammock, fire pit, picnic table, and a cleared area for a tent. The record is silent as to the distance from the home to the Grove, but a field must be crossed to reach it. The boys were assisted by other adults, including M.S. and the defendant, in setting up a tent and building a campfire. By about midnight only the defendant remained with the four boys. The boys asked the defendant to stay with them, because they could not continue to have a campfire without an adult being present.

Tim went to sleep in the tent. The three other boys remained outside, talking to the defendant. The defendant had been drinking beer earlier in the evening and continued to do so while talking with the boys around the campfire. Eventually, the defendant suggested that they go "skinny dipping" in a nearby pool. The three boys accompanied the defendant to the pool. The boys changed into their gym shorts, while the defendant undressed in the pool house. The defendant came out unclothed, his genitals visible to the boys, and jumped into the pool.

Although the boys went swimming, they were not comfortable with the defendant's nakedness. For example, when the defendant went to the deep end of the pool, the boys swam to the shallow end. Doug testified that when he saw the defendant, it made him feel, in his words, "[d]isgusted[,] I guess." According to Doug, the boys swam away from the defendant because, in his words, "[a]h, I guess we didn't want to be near him. I think I heard a joke about making a warm spot or something, so." When the defendant asked Gabriel to take his shorts off, Gabriel swam away "[b]ecause [he] didn't want to get close to him because he was naked." When the defendant got out of the pool, his naked backside was visible, and Brian testified that that "made [them] feel a lot more uncomfortable and . . . about after five minutes [they] all got out because of that . . . [they] were nervous."

The group returned to the campsite and warmed up by the campfire. Tim woke up and joined them. As they were sitting

[1]The boys' names are all pseudonyms.

around the fire, the defendant asked the boys on several occasions to get him beer from the cooler on the deck of the house, where the party had been held. The boys complied, crossing the field to the home to retrieve the beer. At one point, the defendant offered beer to the boys; Tim, Brian, and Doug each took a sip. Gabriel was attempting to take a sip of beer when the defendant bumped the bottom of the bottle, forcing the nine year old to take a gulp.

The defendant then offered to show the boys pictures from a Playboy magazine. He and the boys went to the house, and the defendant retrieved an issue of Playboy magazine from his room. They returned to the Grove, where the defendant initially showed only the three older boys pictures from the magazine, but eventually succumbed to Gabriel's badgering and showed him at least one picture.

The defendant then tried to get into the hammock to go to sleep, as the boys settled into the tent. By this time the defendant was so intoxicated that he kept falling out of the hammock. Brian and Doug tried to help him into the hammock. They eventually succeeded, and all went to sleep.

The following morning, the boys reported to M.S. "the things that happened that night," because, according to Brian, "[they] were thinking all of the stuff that [the defendant] actually did and, that made [them] nervous, and . . . [they] knew that the stuff [the defendant] did was wrong after [they] thought about it and so [they] told [M.S.] then before it was too late."

The defense called three character witnesses who worked with or supervised him in his employment at the DeSisto School, where he counseled troubled teens. The defendant also testified. He admitted showing the boys the Playboy magazine and acknowledged that he probably should have used better judgment. He claimed that he had intended to swim alone, and that he did not realize the boys were there until he had already gotten in the pool without wearing any clothes. When they arrived, the defendant said he got out immediately and put on his boxer shorts before getting back in the pool. The defendant claimed that, because of his intoxication, he did not remember giving the boys sips of beer, although he acknowledged that he

asked the boys on at least one occasion to retrieve beer for him from the cooler at the house.

1. *Sufficiency of the evidence.* We first address the defendant's sufficiency claims, as they are dispositive of three of the categories of charges on appeal. The defendant contends that the evidence did not support the charges of disseminating matter harmful to minors, open and gross lewdness, and furnishing alcohol to minors. The challenges to each of the convictions will be addressed seriatim, along with additional facts necessary to our discussion.

a. *Dissemination of matter harmful to minors.* The defendant's attack on this charge focuses on the meaning of "matter harmful to minors," G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2, dissemination of which to minors is prohibited by the former statute, and the definition of which is found in G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 6:

> "[M]atter is harmful to minors if it is obscene[2] or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors."

The defendant argues that the evidence was insufficient to permit the jury to conclude that the magazine had the characteristics described in any of the three sections of the definition. There was no dispute at trial, nor is there any on appeal, that the defendant showed a Playboy magazine that contained pictures of naked women to four minors. The prosecutor, however, did not introduce the magazine in evidence, and relied

---

[2]The term "obscene" is further defined in the same section as follows:

"[M]atter is obscene if taken as a whole it (1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value."

G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 7.

instead on the testimony of the four minor witnesses to describe the pictures. The jury, therefore, had to rely on the evidence provided by the four boys to make their determination whether the material was harmful to minors.

The evidence before the jury was as follows. Tim testified that he looked at the magazine with the defendant, Doug, and Brian for about ten minutes. During that time, Tim saw only one picture of a woman, who was naked from the waist up, and as he looked at the picture the defendant was talking about "what you could do to the girls and talking about their like boobs and stuff." The discussion made Tim "a little bit uncomfortable." Doug testified that he looked at the magazine for about twenty seconds and saw pictures of women who were naked on "[t]he top and the bottom." Doug was not too sure how many pictures he saw, but he testified that as the defendant was flipping through the pages, he "asked us wouldn't you want to suck those nipples."

Brian testified that he looked at the magazine for about fifteen minutes. The defendant was holding it and he kept stopping at particular pictures and asking them "if we ever, would we like to touch those boobies and stuff like that." According to Brian, "two pages had pictures of naked girls on 'em, then it had like, it was like the college girls they were dressed up like but showing their boobs and stuff like that." Brian also testified that he saw the pictures the defendant showed to Gabriel and they depicted "[f]ull pictures of complete naked girls laying down." Gabriel claimed, however, to have seen only one picture, which showed a "lady" whose "upper body" was "naked."

Ordinarily, on a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *James*, 424 Mass. 770, 784 (1997), quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). "When assessing the sufficiency of the evidence, we resolve issues of credibility in favor of the Commonwealth; '[i]t does not matter that some of the evidence could be characterized as equivocal or contradictory.'" *Commonwealth* v. *James, supra* at 785, quoting from *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991).

The defendant, however, also argues that the convictions violate his right to free expression under the First Amendment to the United States Constitution, a right implicated because the obscenity or pruriency of the material he showed to the boys was at issue. Where First Amendment rights are implicated with respect to a determination whether materials are obscene or prurient, an appellate court must conduct an independent review of the materials to determine de novo whether the materials fall within those categories. See *O'Connor* v. *Steeves*, 994 F.2d 905, 912-913 (1st Cir.), cert. denied sub nom. *Nahant* v. *O'Connor*, 510 U.S. 1024 (1993), quoting from *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) ("appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free speech' "); *Commonwealth* v. *Moniz*, 338 Mass. 442, 446-447 (1959) (courts must themselves judge pruriency of material to determine constitutional issue in obscenity context). Cases involving speech under the First Amendment require independent appellate review of the offending material to ensure that protected speech is not infringed. *Commonwealth* v. *Bean*, 435 Mass. 708, 714 (2002), citing *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. at 504-505. The issue is made difficult in this case as the Commonwealth failed to introduce either the magazine itself or one of similar nature. See *Commonwealth* v. *Sullivan*, 55 Mass. App. Ct. 775, 778 (2002). In any event, we review the entire record de novo on this issue. In so doing, in keeping with the statutory definition of "matter," we consider the testimony regarding the photographic representations only, and not as they may have been viewed in conjunction with certain lewd comments made by the defendant as the boys were observing the pictures.[3]

One way for the Commonwealth to prove that matter is harmful to minors is to show that the material is obscene, as our law

---

[3]"Matter" is defined as "any printed material, visual representation, live performance or sound recording including but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, pictures, photographs, figures, statues, plays, dances." G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12. Under the definition, the photographs qualify as "matter," but the defendant's oral statements do not.

defines obscenity. Matter is obscene if, taken as a whole, "it (1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." See G. L. c. 272, § 31, as quoted in note 2, *supra.* The obscenity test is in the conjunctive, and the Commonwealth is obliged to prove all three elements. *Commonwealth* v. *Plank,* 378 Mass. 465, 467 (1979). Nothing in the testimony suggests that the photographs shown to the boys depicted or described sexual conduct in any way, much less in a patently offensive way; the Commonwealth's proof thus founders at least on the second standard of the obscenity test.

We then consider whether the photographs as described by the witnesses were sufficient under the alternate prong of the dissemination to minors definition, that is, whether, when taken as a whole, the material "(1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors." G. L. c. 272, § 31. Again, these standards are in the conjunctive, and the Commonwealth must offer proof sufficient to sustain its burden with respect to all three.

The testimony of the four boys indicated no more than that they saw photographs of naked women. No other details were provided, there was no description of sexual conduct or sexual excitement, and the material "as a whole" was not introduced in evidence or described in any way other than as being a Playboy magazine. We think that, solely on the basis of the boys' description of the nude pictures, a fact finder could not determine beyond a reasonable doubt that the materials, taken as a whole, "appeal[ed] solely and numbingly to the obsessively sexual (i.e., prurient) interest" of the minors. *Commonwealth* v. *Rollins,* 60 Mass. App. Ct. 153, 159 (2003), quoting from *Commonwealth* v. *Dane Entertainment Servs., Inc.,* 19 Mass. App. Ct. 573, 578 n.6, *S.C.,* 397 Mass. 197 (1986). Contrast *Commonwealth* v. *Sullivan,* 55 Mass. App. Ct. at 777

(magazines "were devoted to close up, clinically explicit photographs of men and women engaging in assorted forms of sexual intercourse"). While testimony may provide an adequate substitute for the introduction in evidence of the offending material, in this case the testimony of the four boys "left a good deal to the imagination." See *Commonwealth* v. *Plank,* 378 Mass. at 466, 469-470 (testimony describing dance performance in which defendant touched her exposed breasts and pubic area three or four times was insufficient to show that conduct was patently offensive). The evidence here is insufficient to establish beyond a reasonable doubt that the pictures appealed predominantly to the prurient interest of minors.

Finally, we conclude that, absent the magazine, the descriptions of the pictures given by the boys, standing alone, were insufficient to permit a fact finder to determine beyond a reasonable doubt that the material, taken as a whole, lacked serious literary, artistic, political, or scientific value for minors. The jury had no evidence of the remaining content of the magazine from which they might make a judgment in this regard. See *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374, 386 (1976) ("In deciding whether material is constitutionally protected, the triers of fact should look to the work as a whole . . .").

We therefore reverse the convictions of four counts of dissemination of matter harmful to minors, and order that judgment enter for the defendant thereon.

b. *Open and gross lewdness.* While not defined in the statute, G. L. c. 272, § 16, the crime of "open and gross lewdness and lascivious behavior" requires proof of five elements, the fifth of which, in question here, is that the defendant's act of exposure must in fact alarm or shock one or more witnesses to the exposure. See *Commonwealth* v. *Kessler,* 442 Mass. 770, 773 & n.4 (2004).

While the boys reported nervousness and discomfort at the defendant's conduct, their testimony, considered as a whole, reveals emotional reactions that fall short of the "serious negative emotional experience required by the statute." *Commonwealth* v. *Kessler, supra* at 774. Doug's testimony that someone had made a joke about swimming away from the defendant because of a "warm spot or something" suggests

nervousness of a type that the *Kessler* court found insufficient to show shock or alarm. See *id.* at 772-775 (holding nervous laughter in reaction to witnessing lewd act not illustrative of "significant negative emotions" required for conviction).[4]

An important factor in determining whether a witness experienced alarm or shock is whether the witness immediately reported the incident. See *Commonwealth* v. *Gray*, 40 Mass. App. Ct. 901, 901 (1996) (witness "immediately left . . . and asked another . . . to call the police"); *Commonwealth* v. *Poillucci*, 46 Mass. App. Ct. 300, 300-301, 303-304 (1999) (child witness alerted parents contemporaneously with observation of conduct). Here, the boys did not experience a reaction so intense that they immediately sought to notify someone of the defendant's behavior. Rather, they waited until the following morning, and made their report only in the context of a variety of other incidents that they felt were wrong.

The boys' reported nervousness and discomfort, while certainly "unpleasant," *Commonwealth* v. *Kessler, supra* at 774, are not the types of emotional reactions that establish the commission of the felony of open and gross lewdness, as distinguished from the misdemeanor of indecent exposure, the latter punishable under G. L. c. 272, § 53. See *Commonwealth* v. *Kessler, supra* (differentiating between offenses).[5] The boys' reactions here are insufficient to establish the fifth element of the charge, and we therefore reverse the conviction of open and gross lewdness and order that judgment enter for the defendant on that count.

---

[4]Regarding Doug's "[d]isgusted[,] I guess" response to a question asking how he felt about witnessing the defendant's actions, statements by witnesses that they experienced feelings of disgust have been found, with other evidence, indicative of shock or alarm. See *Commonwealth* v. *Gray*, 40 Mass. App. Ct. 901, 901 (1996); *Commonwealth* v. *Guy G.*, 53 Mass. App. Ct. 271, 273-274 (2001). The cases cited are distinguishable from the instant case, however, because in neither case was the witness equivocal as to whether he or she felt disgust, and the witness in the cited cases either reported the incident immediately, *Commonwealth* v. *Gray, supra*, or testified to being "too in shock" to report the incident immediately, *Commonwealth* v. *Guy G., supra* at 274.

[5]Because we reverse the defendant's conviction of open and gross lewdness based on insufficient evidence, we do not consider the defendant's additional argument that the judge's instructions on this count constituted reversible error.

c. *Furnishing alcohol to a minor.* "General Laws c. 138, § 34, is a patchwork of several related, but distinct, provisions." *Commonwealth* v. *Kneram,* 63 Mass. App. Ct. 371, 373 (2005). At issue in this appeal is the so-called "furnishing provision," which sets forth criminal penalties for

> "who[m]ever furnishes . . . alcohol for a person under 21 years of age . . . . For the purpose of this section the word 'furnish' shall mean to knowingly or intentionally supply, give, or provide to or allow a person under 21 years of age except for the children and grandchildren of the person being charged to possess alcoholic beverages on premises or property owned or controlled by the person charged."

G. L. c. 138, § 34, inserted by St. 2000, c. 175.

The defendant does not challenge the evidence that showed he gave the boys beer to drink, but argues instead that the Commonwealth failed to prove that he did so on "premises or property owned or controlled" by him.[6] Because it is clear that the defendant did not "own" the campsite where the drinking occurred, we focus only on the element of "control."

There are a variety of sources that have defined the word "control." According to Webster's Third New Intl. Dictionary 496 (1993), "control" means "to exercise restraining or directing influence over." Similarly, Black's Law Dictionary 353 (8th ed. 2004) defines "control" as "to exercise power or influence over." In a statute that is analogous to ours, a Pennsylvania court interpreted the word "control"[7] and held that even though the defendant lacked "sole control and dominion over the

---

[6] We reject the Commonwealth's suggestion that the ownership or control clause modifies only the phrase "allow . . . to possess" and not the prior terms "supply," "give," and "provide." We find the Commonwealth's reading strained and out of line with the origins of the particular statutory language. See *Commonwealth* v. *Kneram,* 63 Mass. App Ct. at 373 (provision, inserted by Social Host Act in 2000, was "enacted in response to public outcry over a series of drunk driving incidents that occurred after parties at private homes").

[7] The Pennsylvania statute makes criminal the furnishing of alcoholic beverage to a person less than twenty-one years of age, where "furnish" is defined to mean "to supply, give or provide to, or allow minor to possess on property owned or controlled by the person charged." *Commonwealth* v. *Lawson,* 759 A.2d 1, 4 (Pa. Super. Ct. 2000).

premises" in question (an apartment he shared with three room-mates), "he ha[d] control over acts committed thereupon" because he "could have ordered all of the individuals present to cease their unlawful activity." *Commonwealth* v. *Lawson*, 759 A.2d 1, 4 (Pa. Super. Ct. 2000). Because the defendant in *Lawson* chose instead "to consume alcoholic beverages . . . . [H]is action, or lack thereof, indicated that he condoned the illegal activity." *Ibid.* Control in the context of furnishing alcohol to minors has been statutorily defined elsewhere as "the authority or ability to regulate, direct or dominate" activity on the premises. See *State* v. *Manfredonia*, 649 So. 2d 1388, 1389 n.1 (Fla. 1995).

Here, the evidence showed that the boys were not permitted to have a campfire without an adult being present.[8] Encouraged by the minors to stay, the defendant agreed to provide adult supervision. In this role, the defendant was more than simply a visitor to the camp. See *Commonwealth* v. *Kneram*, 63 Mass. App. Ct. at 377 n.10. As the only adult present, he had the ability to control the behavior of the young people present and of others who might come into the Grove, and especially the ability to control the possession of alcohol and the attendant delinquent behavior of the juveniles. Because the defendant exercised a restraining or directing influence over the activities at the campsite, the Commonwealth produced sufficient evidence to prove that he was in control of the property.

Nonetheless, we reverse the convictions for furnishing alcohol to minors on other grounds, see part 2.c, *infra*.

2. *Jury instructions.* The defendant argues that the instructions to the jury regarding the elements of disseminating matter harmful to a minor and of contributing to the delinquency of a minor were fatally flawed. In addition, the defendant argues that the judge improperly denied his request for an intoxication instruction. We address each of these claims in turn.

a. *Disseminating matter harmful to minors.* The judge read the statutory definition of the crime and included in his instructions the definition of "harmful to minors" from G. L. c. 272,

---

[8]Nothing in the evidence reveals the source of this regulation, but it was uncontested at trial that this was the reason the defendant was asked to remain in attendance.

§ 31. The defendant claims that he should have included all of the applicable definitions set forth in § 31, particularly that pertaining to "obscene." Because of our conclusion that there was insufficient evidence to support these charges, see part 1.a, *supra*, we need not decide whether the jury instructions thereon were flawed. We note, however, that the more prudent course would have been, at a minimum, to provide the jury with the definitions from § 31 that were applicable to the circumstances.

b. *Contributing to the delinquency of a child.* The defendant also argues that the jury instructions were deficient on the contributing counts because the judge did not instruct on the knowledge element of the crime or the predicate act of delinquency and its elements. The defendant claims that the latter flaw left the jury without the information necessary to evaluate whether a delinquent act had been committed, and that such a determination is beyond the common knowledge of ordinary citizens. As there was no objection to the charge, we review to determine whether the error, if any, created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Whitman*, 430 Mass. 746, 750 (2000).

Contributing to the delinquency of a child requires proof that the defendant "caused, induced, abetted, or encouraged or contributed toward the delinquency of a child, or . . . acted in any way tending to cause or induce such delinquency." G. L. c. 119, § 63, as amended through St. 1996, c. 450, § 162. Delinquency is defined in terms of a minor's violation of a city ordinance or town by-law or commission of an offense against a law of the Commonwealth. G. L. c. 119, § 52. In addition, decisional law has made clear that the Commonwealth must also prove that the defendant "acted knowingly in the subversion of the minor — shall have understood that [his] conduct was blameworthy in relation to the minor." *Commonwealth* v. *Garcia*, 48 Mass. App. Ct. 201, 203 (1999).

The defendant's claim that the jury were not properly instructed on delinquency is unpersuasive. The judge defined a delinquent act as one that "violates a [l]aw of the Commonwealth, a [c]ity [o]rdinance or a [t]own [b]y-law." The instruction comported with the statutory definition of the term

and Instruction 5.63 of the Model Jury Instructions for Use in the District Court (1995). More was not required. See, e.g., *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 653, 656-657 (2002) (although burglary has as element intent to commit felony, trial judge is not required to define elements of intended felony, nor must indictment even specify intended felony by name, as identity of felony is not element of crime of burglary and jury can find intent to commit unspecified felony).

Even if we were to conclude that the judge had erred, the lack of an instruction, or a more specific delineation in the charge regarding the delinquent act of the minors, did not influence the guilty verdict, and thus, there was no substantial risk of a miscarriage of justice. In the instant case the Commonwealth, on uncontroverted evidence, showed that, by possessing or transporting the beer, the minors violated G. L. c. 138, § 34C.[9] Compare *Commonwealth* v. *Santos*, 47 Mass. App. Ct. 639 (1999) (act alleged to be delinquent was in fact not). Moreover, the jury convicted the defendant of all four counts of the related offense of furnishing alcohol to minors, serving to bolster the conclusion that the jury had concluded that each of the minors illegally possessed alcohol. In these circumstances, an instruction concerning possession of alcohol by minors would have been of no benefit to the defendant. Any error in the judge's failure to identify more precisely the alleged predicate delinquent act was unlikely to have materially influenced the jury's verdict of guilt, although better practice would be to identify in closing instructions that certain activity, here possession of the alcohol, was the delinquent act alleged.

The defendant also argues that the judge erred in failing to instruct the jury on the knowledge element of the crime. We think the defendant's reliance on *Commonwealth* v. *Garcia*, 48 Mass. App. Ct. 201 (1999), in this regard is misplaced. In the *Garcia* decision, we concluded that the Commonwealth had

---

[9]The statute provides in relevant part that "[w]hoever being under twenty-one years of age and not accompanied by a parent or legal guardian, knowingly possesses, transports or carries on his person, any alcohol or alcoholic beverages, shall be punished . . . ." G. L. c. 138, § 34C, as amended through St. 1984, c. 312, § 8.

failed to prove that the defendant knew that property being transported by the juvenile, whom she assisted by giving a ride, was stolen. *Id.* at 204. Here, there is ample proof that the defendant knew he was involving the minors in the possession, transportation, and consumption of the beer.

The defendant makes an additional corollary argument that the charges of contributing to the delinquency of a child must be dismissed because the complaints fail to allege that the proscribed acts were done knowingly. The defendant relies on *Commonwealth* v. *Palladino*, 358 Mass. 28, 30-32 (1970), but that opinion's broad language has been limited by subsequent decisions. See *Commonwealth* v. *Bacon*, 374 Mass. 358, 361 (1978) ("[w]e recognize no general rule that knowledge must be alleged in all complaints and indictments as to crimes in which knowledge is a necessary element to be proved"); *Commonwealth* v. *Green*, 399 Mass. 565, 567-568 (1987). The *Bacon* decision distinguished the *Palladino* decision on the ground that the latter case, a prosecution for possession of obscene matter, required proof of knowledge "of a more specific kind" than that required by statutes generally, justifying a requirement that a complaint for possession of obscene matter allege scienter. *Commonwealth* v. *Bacon*, *supra* at 360-361. When the knowledge at issue is of a more general nature, such as knowledge that one is carrying a gun, as in the *Bacon* decision, or knowledge that one is providing alcohol for children, as in the instant case, a complaint is not deficient for failure to allege the knowledge element. See *ibid.* See also *Commonwealth* v. *Garcia*, 48 Mass. App. Ct. at 203-204.

c. *Intoxication instruction.* The defendant argues that the judge erred in denying his request to instruct the jury to consider the evidence of his intoxication when deciding whether he possessed the necessary mens rea to commit each of the crimes charged. The defendant also argues that the error was exacerbated by the instruction that the judge did give: that intoxication is not a legal defense to a criminal charge.[10]

---

[10]The judge's instruction in this regard echoed the general intent crimes portion of Instruction 6.06 of the Model Jury Instructions for Use in the District Court (1995). At the precharge conference, the judge rejected the defendant's request that the specific intent crimes portion of the model instruc-

The law in Massachusetts has held firmly to the rule that there is no "diminished capacity" defense based on intoxication, *Commonwealth* v. *Murphy*, 442 Mass. 485, 488 n.4 (2004), but makes clear that mental impairment, whether resulting from intoxication or otherwise, may be relevant to issues of deliberate premeditation, extreme atrocity or cruelty, and intent and knowledge. *Commonwealth* v. *Hardy*, 426 Mass. 725, 729 n.5 (1998). In reaching this conclusion, our courts have acknowledged that voluntary intoxication may preclude a defendant from forming the malice necessary to commit murder. See *Commonwealth* v. *Sires*, 413 Mass. 292, 299 (1992). In *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985), the court explicitly ruled that where a crime "requires proof of a specific criminal intent and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge should instruct the jury, if requested, that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the Commonwealth has proved specific intent beyond a reasonable doubt." In *Commonwealth* v. *Sama*, 411 Mass. 293, 297-299 (1991), the court concluded that intoxication could be considered in deciding whether the Commonwealth had proved the knowledge that must be shown under the third prong of malice — which requires the defendant to possess a meaningful knowledge of the circumstances at the time of the victim's death. Although not made explicit in *Commonwealth* v. *Sama*, *supra*, the context of the decision suggests that with respect to crimes that have a "knowledge" component of the mens rea requirement, in addition to or in lieu of intent, the defendant's intoxication is only relevant if the crime requires a specific knowledge. See *Commonwealth* v. *Bacon*, 374 Mass. at 361 (recognizing that obscenity conviction requires "knowledge of a more specific kind"). Also, in order to obtain an instruction on voluntary intoxication, there must be evidence of "debilitating intoxication." *Commonwealth* v. *Moses*, 436 Mass. 598, 603

---

tion be given, and noted the defendant's objection to the general intent portion. The question was thus preserved. See *Commonwealth* v. *Biancardi*, 421 Mass. 251, 253-254 (1995).

(2002), quoting from *Commonwealth* v. *Chaleumphong*, 434 Mass. 70, 78 (2001).[11]

We consider the issue only as it applies to the remaining charges. The initial issue is whether furnishing alcohol to a minor or contributing to the delinquency of a minor requires a specific intent or a specific knowledge as an element of the offense. With respect to furnishing alcohol, the statute (G. L. c. 138, § 34, see part 1.c, *supra*) provides that " 'furnish' shall mean to knowingly or intentionally supply, give, or provide . . . ." While the knowledge requirement might be construed as of the more general kind, see *Commonwealth* v. *Bacon, supra*, the statute here provides, in the disjunctive, that the furnishing be intentional. We conclude that the statute requires proof of specific intent, and that debilitating intoxication may affect the defendant's ability to form such intent. We are constrained to construe the statute strictly, *Commonwealth* v. *George*, 430 Mass. 276, 278 (1999), and in order to do so, we read the word "intentionally" as "a conscious act with the determination of the mind to do an act. It is contemplation rather than reflection and it must precede the act." *Commonwealth* v. *Nickerson*, 388 Mass. 246, 253-354 (1983). Because the defendant's intoxicated state was relevant to his ability to form the intention, the instruction should have been given upon the request, even though it may have permitted the defendant to be insulated from conviction for furnishing alcohol to minors because he himself was highly intoxicated.

Contributing to the delinquency of a minor, however, does not require a specific intent. Decisional law has indicated that the defendant must "have understood that [his] conduct was blameworthy in relation to the minor," but only to make clear that the crime is not one of strict liability. *Commonwealth* v. *Garcia*, 48 Mass. App. Ct. at 203-204 & n.5. Nor does the statute itself contain a requirement of intent or knowledge. The requested instruction was not required with respect to this crime.

3. *Cumulative errors.* The defendant's contention that the cumulative effect of the errors deprived him of his right to

[11]Here, there was evidence that the defendant had consumed a large quantify of alcohol during the evening, that he was intoxicated, and that he kept falling out of the hammock when he went to bed.

present a defense fails with respect to the remaining charges because there were no errors.

4. *Ineffective assistance.* Recast as claims of ineffective assistance of trial counsel, the defendant's arguments gain no additional heft.

5. *Conclusion.* As to the charges of open and gross lewdness and disseminating matter harmful to minors, the judgments are reversed, the verdicts are set aside, and judgments shall enter for the defendant. As to the charges of furnishing alcoholic beverages to minors, the judgments are vacated and the verdicts are set aside. The judgments of conviction of contributing to the delinquency of minors are affirmed.

*So ordered.*