## COMMONWEALTH *vs.* SEAN K. DODGSON.

No. 09-P-1972.

Plymouth. November 12, 2010. - September 1, 2011.

Present: McHugh, Sikora, & Fecteau, JJ.

*Obscenity,* Dissemination of matter harmful to minor, Dissemination of obscene matter to minor. *Evidence,* Prior misconduct, Motive. *Practice, Criminal,* Argument by prosecutor, Assistance of counsel. *Words,* "Matter," "Dissemination."

This court concluded that St. 2010, c. 74, § 2, which amended G. L. c. 272, § 31, to include within the prohibition against dissemination of "matter" harmful to a minor any electronic communication, including online messages, could not apply retroactively to a criminal defendant's 2006 conduct. [310-311]

This court concluded that a criminal defendant's transmission of a picture of a naked erect penis in a private online conversation constituted "dissemination" of obscene material for the purposes of G. L. c. 272, §§ 29 and 31. [311-312]

At the trial of indictments charging attempted dissemination of matter harmful to a minor, dissemination of obscene matter, and enticement of a child, the judge did not err in admitting in evidence of the defendant's online adult dating service subscription, where the evidence tended to show the defendant's motive of sexual indulgence or gratification and to rebut the defendant's claim that the purpose of his actions was to test law enforcement response to possible online child predators. [312-313]

At a criminal trial, the prosecutor, in closing argument, neither improperly expressed his personal belief in the defendant's guilt nor improperly aligned himself with the jury and appealed to their emotions [313-314]; further, the prosecutor's remarks on the defendant's opportunity to rehearse his testimony were not improper, when taken in context [314-315], and the prosecutor's comment on the absence of communication between the defendant and his wife did not violate either the letter or purpose of G. L. c. 233, § 20 [315].

This court declined to entertain a criminal defendant's claim of ineffective assistance of counsel in the absence of a collateral record. [315-316]

INDICTMENTS found and returned in the Superior Court Department on September 22, 2006.

The cases were tried before *Elizabeth B. Donovan,* J.

*Edward J. O'Brien* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

SIKORA, J. At the conclusion of a three-day trial, a Superior Court jury convicted the defendant, Sean K. Dodgson, of three counts of attempted dissemination of matter harmful to a minor within the meaning of G. L. c. 272, §§ 28 and 31; one count of dissemination of obscene matter within the meaning of G. L. c. 272, §§ 29 and 31; and two counts of enticement of a child under the age of sixteen within the meaning of G. L. c. 265, § 26C.

The defendant now appeals from these convictions upon grounds that (1) online instant messages are not "matter" as defined by G. L. c. 272, §§ 28 and 31; (2) the private transmission of a picture is not "dissemination" of obscene material under G. L. c. 272, §§ 29 and 31; (3) the admission of his subscription to an online adult dating service was improper; (4) the prosecutor's closing argument was improper; and (5) he suffered ineffective assistance of counsel. For the following reasons, we affirm the judgments for dissemination of obscene matter and enticement of a child. We reverse the judgments for attempted dissemination of matter harmful to a minor, set aside those verdicts, and enter judgments for the defendant on those counts.

*Background.* The evidence permitted the jury to find as follows. In June, 2006, Deputy Sheriff Melissa Marino and State police Trooper Peter Cooke were conducting an undercover online investigation in which each posed as a minor. On June 14, 2006, Marino entered a Yahoo[1] Massachusetts-based adult romance "chat room" using the undercover screen name "melissaqt1995." Her profile indicated that she was an eighth-grader named "Melissa."

The defendant, also in the chat room, sent a private instant message to "Melissa" under the screen name "alaughahugand-asmile," and they began to converse.[2] "Melissa" said that she was a thirteen year old girl living in a hotel in the town of Kingston with her mother. The defendant claimed to be a twenty-four

---

[1]Yahoo is a Web site that provides public Internet discussion and private online conversations, which are also known as "instant messages." See *Commonwealth* v. *Zubiel*, 456 Mass. 27, 28 n.2 (2010).

[2]The defendant conducted all instant message conversations from a computer at the office where he was working as a computer network consultant.

year old male.[3] The discussion quickly turned sexual, and the defendant continuously made graphic sexual remarks and proposals. He eventually sent "Melissa" a picture of a naked erect penis, which he claimed to be his own, and made sexually explicit comments about it. "Melissa" and the defendant discussed the possibility of a meeting, but made no specific plans.

On June 15, 2006, the defendant began a private instant message conversation with "Melissa." Almost immediately, the conversation turned sexual. During the conversation, "Melissa" said that she was talking to her friend "Krissy," who was also thirteen. "Krissy" was Cooke's undercover identity. The defendant suggested that the three of them should meet and engage in sexual intercourse and related activity. "Melissa" eventually gave the defendant "Krissy's" screen name, "krissy01_10_1993," and the defendant sent an instant message to her. Their conversation was also immediately and continuously sexually graphic. The defendant mentioned to "Krissy" the possibility of meeting both girls that night. He later made specific plans with "Melissa" by both instant message and a brief telephone conversation.

The defendant agreed to meet "Melissa" and "Krissy" at a Burger King located in Kingston. At the agreed meeting time, Marino, Cooke, and two other law enforcement officers, all undercover, parked at a Dunkin' Donuts shop across the street from the Burger King. Marino received a telephone call from the defendant and saw him on a cellular telephone in a green van. After the telephone call, Marino watched the defendant walk up and down the road in front of the Burger King. He then drove to the Dunkin' Donuts lot, parked directly across from Marino and Cooke's vehicle, stared at Marino and Cooke as he exited his van, entered the Dunkin' Donuts, looked at them again as he returned to his vehicle, and left.

On June 16, 2006, the defendant sent an instant message to "melissaqt1995" stating, "I am glad to see the young girls of Kingston are being protected [from] potential harm." He claimed that he knew that he was communicating with a police operation and that he was testing the effectiveness of the law enforcement system. For part of this conversation, Cooke pretended to be

---

[3]He was actually forty-seven.

"Melissa," but eventually revealed himself as a State trooper and proposed that the defendant contact him to arrange an interview.

On June 19, 2006, the defendant, using a computer at the office of his employer, deleted all his Yahoo contacts and edited his profile on Yahoo. He also reinstalled the Windows operating system on that computer. On June 20, 2006, the defendant created a two-page document describing the events of June 14 and 15, 2006, his motives, and the perceived flaws in the police operation.

On July 15, 2006, Cooke and State police Trooper Richard Long arrested the defendant. The defendant waived his Miranda rights and Cooke and Long interviewed him. During the interview, the defendant continued to assert that he knew that he was talking to the police and was testing their performance because he was concerned about his daughters' online safety. Throughout the interview Cooke challenged the defendant's claims and stated his opinion that the defendant was guilty.

At trial, the transcript and audiotapes of Cooke's interview came into evidence without objection. Also without objection, Marino and Cooke read the instant message dialogues to the jury; the jurors then received copies of the transcript of them. Over objection, the judge allowed evidence of an adult dating site subscription found on the defendant's computer and paid for by the defendant's credit card. In his closing argument, the prosecutor referred to the defendant's guilt, his ability to "rehearse" his story, and his lack of communication with his wife about his testing of Internet law enforcement. Defense counsel objected unsuccessfully to the prosecutor's reference to guilt.

*Discussion. 1. Online messages as "matter harmful to a child."* General Laws c. 272, § 28, as amended by St. 1982, c. 603, provides: "Whoever disseminates to a minor any matter harmful to minors, as defined in section thirty-one, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors, shall be punished . . . ." At the time of the defendant's conduct in June, 2006, G. L. c. 272, § 31, as amended by St. 2002, c. 161, § 1, defined "matter" as "any handwritten or printed material, visual representation, live performance or sound recording including but not limited to, books, magazines, motion picture films, pamphlets,

phonographic records, pictures, photographs, figures, statues, plays, dances." Here, the "matter" found to have been disseminated was instant message communications over the Internet. In *Commonwealth* v. *Zubiel*, 456 Mass. 27, 30-33 (2010), the court held that online electronically transmitted messages are not "matter" as defined by § 31. Therefore, we must reverse the defendant's convictions for attempted dissemination of matter harmful to a minor.

After *Zubiel*, the Legislature amended G. L. c. 272, § 31, to include within the definition of matter any electronic communication, including online messages. St. 2010, c. 74, § 2 (approved April 12, 2010). The 2010 amendment, however, cannot apply retroactively to the defendant's 2006 conduct. Art. I, § 10, cl. 1, of the United States Constitution ("No State shall . . . pass any . . . ex post facto Law").

2. *Dissemination of the picture.* The defendant argues that the transmission of the picture of the naked erect penis in a private online conversation does not constitute "dissemination" of obscene matter under G. L. c. 272, §§ 29 and 31. We disagree.

General Laws c. 272, § 31, inserted by St. 1974, c. 430, § 12, defines the term "disseminate," for purposes of § 29, as "to import, publish, produce, print, manufacture, distribute, sell, lease, exhibit or display." The defendant argues that the common thread of these words is public or commercial character. In *Commonwealth* v. *Rollins*, 60 Mass. App. Ct. 153, 154-156 (2003), the defendant dropped in a residential area obscene materials from a car on three different occasions. This court held that the evidence was sufficient for a finding that the defendant had dropped the material "intending and expecting that the material would be seen by individuals whom he knew were in the area." *Id.* at 157. Thus, the defendant in *Rollins* "disseminated" the material within the meaning of G. L. c. 272, § 31, despite the absence of commercial activity. *Id.* at 157-158. Additionally, we have noted that additions to the obscenity statutes by the Legislature have "criminalized behavior that is not necessarily commercial in nature." *Commonwealth* v. *O'Keefe*, 48 Mass. App. Ct. 566, 571 (2000).

Nor does dissemination require proof of multiple recipients. The opening words of G. L. c. 272, § 28, as example, recite,

"Whoever disseminates to *a minor* any matter harmful to minors . . ."[4] (emphasis supplied). As one synonym of the verb "disseminate," § 31 uses the word "distribute." One can "distribute" material to singular or multiple individuals. As a practical matter, distribution of obscene matter to a single individual, especially a minor, releases it for redistribution to others in either original composition or copied form. Requirement of proof of multiple original recipients would contradict the letter and impair the purpose of § 31.

3. *Admission of the online adult dating service subscription.* The defendant argues that the admission of his online adult dating service subscription created improper propensity evidence. "It is a fundamental rule that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Baker,* 440 Mass. 519, 529 (2003), quoting from *Commonwealth* v. *Trapp,* 396 Mass. 202, 206 (1985), *S.C.,* 423 Mass. 356, cert. denied, 519 U.S. 1045 (1996). Such conduct, however, may be admissible for other purposes, such as to show a "common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." *Commonwealth* v. *Helfant,* 398 Mass. 214, 224 (1986). The trial judge will "determine whether such evidence has probative value and, if [it does], whether its probative value outweighs the risk of undue prejudice to the defendant." *Commonwealth* v. *Dwyer,* 448 Mass. 122, 129 (2006). On appeal, the defendant must show an abuse of discretion by the trial judge. See *id.* at 128.

The admission of the dating service subscription was relevant to motive. The defendant claimed that the purpose of his actions was to test the law enforcement response to possible online child predators. The dating service subscription weakened that

---

[4]The Legislature inserted in § 28 the phrase "disseminates to a minor" by St. 1974, c. 430, § 1. As part of the same enactment, *id.* at § 12, it inserted the definitional section codified as G. L. c. 272, § 31, including the verb "disseminate." "[I]n the absence of a plain contrary indication, a word used in one part of a statute in a definite sense should be given the same meaning in another part of the same statute." *Plymouth County Nuclear Information Comm., Inc.* v. *Energy Facilities Siting Council,* 374 Mass. 236, 240 (1978).

claim and tended to show a motive of sexual indulgence or gratification. The trial judge did not abuse her discretion.

4. *Prosecutor's closing argument.* In his closing remarks addressing the picture of the naked erect penis, the prosecutor stated, "It is an obscene image. And the defendant is guilty." The prosecutor also used the word "we," referred to the ability of the defendant to "rehearse" his story, and commented on the defendant's lack of communication with his wife about his claimed probe of law enforcement effectiveness. The defendant, who did not object to those statements at trial,[5] contends that those statements separately or collectively require reversal of his convictions.[6]

Prosecutors must confine their arguments to facts in evidence and reasonable inferences from those facts. *Commonwealth* v. *Chavis,* 415 Mass. 703, 713 (1993). *Commonwealth* v. *Coren,* 437 Mass. 723, 730 (2002). We consider the statements in the setting of the closing argument as a whole, of the jury instructions, and of the evidence produced at trial. *Commonwealth* v. *Lyons,* 426 Mass. 466, 471 (1998). We consider also the lack of objection at trial as "some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Ibid.* (citation omitted).

a. *Use of "we" and references to obscenity and the defendant's guilt.* The prosecutor stated that the picture of the naked erect penis "is an obscene image. And the defendant is guilty." While it is improper for a prosecutor to express his personal belief that the defendant is guilty, *Commonwealth* v. *Earltop,* 372 Mass. 199, 203 (1977), he is "permitted and expected to marshal the evidence and to argue for a decision of the controversy in favor of his client." *Commonwealth* v. *Johnson,* 374 Mass. 453, 459 (1978). Here, the prosecutor was arguing that

---

[5]We note that the only portion of the prosecutor's closing argument to which the defendant did object was the prosecutor's statement that the defendant was not permitted to test the police, and that if he does then "he's guilty." Even if it were an improper argument, the judge's jury instructions on the Commonwealth's burden of proof would have cured any error and prevented prejudice.

[6]The defendant argues also that the prosecutor misstated the evidence and law. "[T]he prosecutor may comment on evidence developed at trial and draw inferences from such evidence." *Commonwealth* v. *Chavis,* 415 Mass. 703, 713 (1993). The prosecutor did not draw improper inferences or misstate the law.

the evidence proved the obscenity element of the offense and supported a finding of guilt beyond a reasonable doubt. The reference was not an improper expression of personal belief.

In reference to the online messages between Marino and the defendant, the prosecutor stated that "the community standard is that those things are not what we want our kids to see and read and hear about." The defendant argues that the prosecutor improperly aligned himself with the jury and appealed to their emotions. While this court has been "troubled" by the use of the pronoun "we," the fleeting use in this case was not excessive and did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Burts,* 68 Mass. App. Ct. 684, 688-689 (2007). In a trial involving obscenity, the use of the word "we" in the prosecutor's closing may present a special problem. The definition of "obscene" under G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 7, requires an application of "contemporary standards of the county where the offense was committed." The prosecutor should not represent himself or herself as the source of those "standards." The use of the word "community" rather than "we" maintains the proper distinction.

b. *Rehearsal reference.* The defendant argues that it was improper for the prosecutor to characterize the defendant's opportunity to rehearse his testimony. In his closing argument, the prosecutor said that the defendant "had all this time to come and rehearse and come on the stand and testify a year later." He went on to ask the jury to consider whether the defendant's testimony sounded "rehearsed."

A prosecutor should generally avoid using the term "rehearse" because it may impinge on the defendant's right to prepare for trial. See *Commonwealth* v. *Haraldstad,* 16 Mass. App. Ct. 565, 574 (1983) (improper to suggest witness's testimony was rehearsed); *Commonwealth* v. *Ewing,* 67 Mass. App. Ct. 531, 541-542 (2006), *S.C.,* 449 Mass. 1035 (2007) (discussing defendant's right to prepare for trial). This impropriety usually arises from the prosecutor's proposal that the defendant, or a witness, prepared testimony with a defense attorney. See *Commonwealth* v. *Ewing, supra* (suggesting witness testimony "was prepared or at least gone over, what I would call rehearsed, I would submit to you rehearsed before they came into this courtroom"). Here, the prosecutor was suggesting that the defendant had

fabricated the explanation that he was testing the efficacy of Internet law enforcement. Prior to the rehearsal references, the prosecutor noted that the defendant had reinstalled Windows and had then written the June 20 document describing his plan to test Internet policing. The prosecutor argued that those actions were part of a preemptive defense strategy and that the defendant had used the interim before trial to refine that ruse. In context, the references to rehearsal were not improper.

c. *Marital communication.* With citation to G. L. c. 233, § 20, the defendant argues that it was improper for the prosecutor to comment on the defendant's lack of communication with his wife about his police surveillance plan as evidence of consciousness of guilt. General Laws c. 233, § 20, as appearing in St. 1996, c. 298, § 10, provides in pertinent part that "neither husband nor wife shall testify as to private conversations with the other." By its terms, the statute protects positive exchanges between spouses. It serves several historical common-law policies, including the protection of marital privacy and confidentiality. *Gallagher* v. *Goldstein*, 402 Mass. 457, 460 (1988). The prosecutor referred only to the absence of a conversation. That remark did not violate either the letter or the purpose of the statute.[7]

5. *Ineffective assistance of counsel.* For a claim of ineffective assistance of counsel, the defendant must show that "there [was] serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defen[s]e." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The preferred method for raising such a claim is not direct appeal but, rather, a motion for new trial directed to the original trial judge. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810-811

---

[7]The statute does not bar evidence of the fact that some conversation occurred. *Gallagher* v. *Goldstein, supra* at 459. A fortiori it should not exclude evidence that none occurred. Additionally, the record does not show any objection to the admission of the defendant's acknowledgment to police that he had not informed his wife of his investigation. That acknowledgment would therefore come into evidence for its probative value. See *Miller* v. *Miller*, 448 Mass. 320, 326 (2007) (contents of a private marital conversation are admissible if no party objects to the offer).

(2006). If the motion presents a substantial factual or legal issue, that process will enable the creation of a meaningful collateral record for its exploration. See *id.* at 811. The exception to the preferred method arises if "the factual basis of the claim appears indisputably on the trial record." *Ibid.* (citation omitted). This case does not belong to that exceptional category. The defendant's claim of ineffective assistance, which includes — among other grounds — the failure to object to offers of evidence, requires determination whether trial counsel's choices rested upon reasonable doctrinal or tactical grounds or upon "manifestly unreasonable" judgment. See *Commonwealth* v. *White,* 409 Mass. 266, 273 (1991). That determination typically requires a collateral record. Accordingly, we decline to entertain the claim of ineffective assistance of counsel upon the present record.

*Conclusion.* We affirm the judgment for dissemination of obscene matter, G. L. c. 272, §§ 29 and 31, because a private electronic transmission of a picture constitutes action to "distribute" such matter; and we affirm the judgments for enticement of a child. We reverse the judgments as to attempted dissemination of matter harmful to a child, G. L. c. 272, §§ 28 and 31, upon the authority of *Commonwealth* v. *Zubiel,* 456 Mass. at 30-33, set aside those verdicts, and enter judgments for the defendant on those counts.

*So ordered.*