NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-1208                                          Appeals Court

COMMONWEALTH vs. JOSE LUGO.

No. 14-P-1208.

Suffolk.     November 9, 2015. - March 18, 2016.

Present: Cypher, Trainor, & Rubin, JJ.

Assault and Battery by Means of a Dangerous Weapon. Joint Enterprise. Evidence, Joint venturer, Knife. Practice, Criminal, Argument by prosecutor, Instructions to jury.

Indictments found and returned in the Superior Court Department on June 27, 2012.

The cases were tried before Linda E. Giles, J.

Jacob B. Stone for the defendant.
Matthew T. Sears, Assistant District Attorney (Megan E. O'Rourke, Assistant District Attorney, with him) for the Commonwealth.

CYPHER, J. The defendant, Jose Lugo, appeals from his convictions by a jury of assault and battery with a knife, assault and battery with a shod foot, and assault with a knife. He argues that the trial judge's denial of his motions for a required finding of not guilty was error because there was

insufficient evidence of his participation in a joint venture to support his convictions of assault and battery with a knife and assault with a knife.  He claims error also in the prosecutor's closing argument and the jury instructions on prior inconsistent statements.  We affirm the defendant's convictions.

Background.  On April 12, 2012, friends Victor Ramos, Milton Henriquez, Edwin Colon, and Alejandro Naranjo spent the evening together at a Boston nightclub.  At closing time, around 2:00 A.M., the four friends returned to their car, which was parked across the street in a multilevel garage.  Waiting in a line of vehicles to exit the garage, the friends were approached by a man from a vehicle in front of theirs who, thinking that they had been honking the horn, punched Colon and Naranjo through their open passenger's side windows.  The four friends got out of their car and Henriquez traded blows with the man before being separated by the friends and others from surrounding vehicles.

When the brawl subsided and the crowd of people who had gathered to watch or take part in the fight began to disperse, a sport utility vehicle (SUV) from an upper level of the garage approached the area and stopped and two men emerged.  One was a tall, skinny man, later identified as Javier Fernandez, and the other was a short man with braids, later identified as the defendant.  According to testimony by Ramos, the two men

appeared to be intoxicated and angry, "[L]ike they wanted to do something."

After greeting and shaking hands with people from the surrounding vehicles, the two men approached Ramos and Henriquez and engaged them in a tense verbal exchange. During the exchange, Fernandez and the defendant stood side by side facing Ramos, and Henriquez stood behind Ramos, facing the defendant. Fernandez and the defendant talked to Ramos and Henriquez, but did not speak to one another. Ramos, attempting to defuse the situation, suggested that they all go home and touched Fernandez on the shoulder or arm, provoking Fernandez, who asked, "[A]re you disrespecting me?" Fernandez left the group and went back to the SUV while the defendant continued talking to Ramos and Henriquez.

Returning from the SUV, Fernandez circled around the group and, approaching Henriquez, stabbed him in the side, under his armpit. Henriquez put his hand on Ramos's shoulder and declared that he had just been stabbed. Ramos saw a knife in Fernandez's hand as Fernandez stepped forward, twice jabbing the knife at him. Ramos grabbed Henriquez and took off running up a ramp to an upper level of the garage. Fernandez and the defendant immediately gave chase, running shoulder to shoulder with another man, identified only as wearing a black polo shirt. As Ramos and Henriquez ran, Fernandez stabbed at Henriquez, who

stumbled and fell to the ground. Fernandez slashed and stabbed at Henriquez and the defendant kicked and stomped on him as he lay on the ground.

Security guard Jeffrey Swanson testified that he observed the defendant stomping on Henriquez with the open sole of his shoe, "like he was trying to put out a fire." While Henriquez was being kicked and stabbed, Ramos grabbed hold of him and tried to drag him away from the assailants. The attack, which lasted about two or three minutes, was interrupted when security guards arrived and ordered the men to stop.

As the security guards assessed the situation and waited for police to arrive, they observed the defendant walking briskly away from the scene and Fernandez throwing a knife under a car. The two men were detained by security personnel. When police arrived, Ramos pointed out the defendant and Fernandez as the men who had attacked Henriquez. Sergeant Michael Talbot testified that while the defendant was in custody at the police station, his behavior was combative and he refused to allow Talbot to photograph a scratch on his hand. A bloodstain taken from the chest area of defendant's outer shirt was determined to be consistent with Henriquez's deoxyribonucleic acid profile.

Discussion. 1. Sufficiency of the evidence. The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and again at the close of all

the evidence.  He claims that these motions were improperly denied because the evidence failed to prove that he participated in a joint venture with knowledge that his companion was armed with a knife.  In reviewing the denial of a motion for a required finding, we examine the relevant evidence in the light most favorable to the Commonwealth and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 433 U.S. 307, 319 (1979).  "We take this view of the evidence notwithstanding any evidence to the contrary presented by the defendant."  Commonwealth v. Garcia, 470 Mass. 24, 30 (2014), quoting from Latimore, supra at 676-677.

In reviewing the sufficiency of the evidence on a theory of joint venture, we must determine whether the evidence presented supports a finding that "the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense."  Commonwealth v. Norris, 462 Mass. 131, 138-139 (2012), quoting from Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009).  In addition, where, as here, "the conviction on a joint venture theory is for a crime that has use or possession of a weapon as an element," the evidence must suffice to show that the defendant knew that his

coventurer was armed with a knife.  Commonwealth v. Britt, 465
Mass. 87, 100 (2013).

There was testimony at trial that the defendant and
Fernandez were friends who had spent the evening together before
they arrived on the scene.  The defendant participated in the
verbal exchange with Ramos and Henriquez and witnessed
Fernandez's escalating agitation during the encounter.  The
defendant stood in a position, facing Ramos and Henriquez, where
he could observe Fernandez circle around and stab Henriquez in
the side.  After Henriquez announced that he had been stabbed,
the jury could also have inferred that the defendant could see
Fernandez jab the knife twice at Ramos.[1]  The defendant
immediately took off with Fernandez in pursuit of Ramos and
Henriquez and, when Henriquez was on the ground, the defendant
kicked and stomped on him while Fernandez repeatedly stabbed
him.  "At no time during this conflict did the defendant seek to
withdraw."  Commonwealth v. Sexton, 425 Mass. 146, 152 (1997).

---

[1] See Commonwealth v. White, 452 Mass. 133, 136 (2008)
(inference drawn from circumstantial evidence "need only be
reasonable and possible; it need not be necessary or
inescapable," nor must every inference "be premised on an
independently proven fact" [citations omitted]); Commonwealth v.
Lee, 460 Mass. 64, 69-70 (2011) (knowledge that coventurer is
armed may be inferred from circumstantial evidence, including
defendant's actions, prior relationship between coventurers, or
shared motive); Commonwealth v. Dosouto, 82 Mass. App. Ct. 474,
480 (2012) (circumstances properly permitted jury to infer that
defendant knew gun was used to commit robbery where defendant
getaway driver watched crime unfold).

From the defendant's actions, a rational trier of fact could conclude, beyond a reasonable doubt, that the defendant possessed the intent to engage in an assault on Ramos and in an assault and battery on Henriquez with Fernandez, and that the defendant was present and saw that Fernandez was armed with a knife the moment Fernandez first stabbed Henriquez. Additionally, the defendant was kicking Henriquez as Fernandez stabbed at him. "There is no need to have an 'anticipatory compact.' It is enough that 'at the climactic moments the parties consciously acted together in carrying out the criminal endeavor.'" Commonwealth v. Young, 35 Mass. App. Ct. 427, 435 (1993), quoting from Commonwealth v. Fidler, 23 Mass. App. Ct. 506, 513 (1987).

2. Prosecutor's closing argument. The defendant challenges certain portions of the prosecutor's closing argument, claiming numerous reversible errors. In particular, he claims that the prosecutor made an improper propensity argument, argued facts not in evidence, misstated evidence, suggested that she had independent knowledge of the truth, engaged in burden-shifting, and repeatedly used the term "victim," in violation of the judge's pretrial order. The challenged statements to which the defendant timely objected -- concerning propensity, facts not in evidence, and burden-shifting -- we review for prejudicial error. See Commonwealth

v. Silva-Santiago, 453 Mass. 782, 807-810 (2009).  The portions of closing argument to which the defendant did not object but challenges now on appeal -- concerning the suggestion of independent knowledge, misstatement of evidence, and use of the term "victim" -- we review for any "substantial risk of miscarriage of justice."  Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).  "Remarks made during closing arguments are considered in context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury."  Commonwealth v. Whitman, 453 Mass. 331, 343 (2009).

a.  Propensity argument.  Referring to evidence of the defendant's consciousness of guilt, the prosecutor stated, "[T]he defendant had been convicted of this behavior in the past, resisting arrest.  Well we can see that here today, right, he tried to walk away once from the security, once from the Boston police."  To the extent that the prosecutor's remark equated the defendant's prior conviction with a propensity to evade responsibility in the present circumstances, it was improper.  "It is a fundamental rule that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged."  Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 312 (2011), quoting from Commonwealth v. Baker, 440 Mass. 519, 529 (2003).

See Commonwealth v. Chartier, 43 Mass. App. Ct. 758, 763 (1997) (in using defendant's prior convictions in substantive sense, "prosecutor strayed over boundary of permissible argument").

Whether the prosecutor's propensity argument constitutes reversible error "depends on our consideration of (1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." Silva-Santiago, supra at 807, quoting from Commonwealth v. Perez, 444 Mass. 143, 151 (2005).

As the defendant objected to the prosecutor's argument, we review for prejudicial error. The improper statement addressed only a collateral issue, that is, the defendant's consciousness of guilt, as opposed to any essential element of the crimes charged. See Commonwealth v. Jones, 432 Mass. 623, 629 (2000) (prosecutor's erroneous remark was aimed only at collateral issue, not heart of defendant's case). Both before and after closing arguments, the judge instructed the jury that those arguments are not a substitute for evidence. See Commonwealth v. O'Connell, 432 Mass. 657, 660 (2000), citing Commonwealth v. Thomas, 400 Mass. 676, 683 (1987) (prosecutor's inaccurate statement "regrettable," but not reversible error "where judge

instructed jury that closing arguments [are] not evidence").

Viewed in the context of the prosecutor's entire argument, the

judge's instructions to the jury, and the evidence at trial, an

isolated reference to the defendant's prior conviction, a fact

that defense counsel had preemptively introduced through the

defendant's testimony, did not make a difference in the jury's

conclusion.

b. Facts not in evidence. The defendant next argues that

the prosecutor's description of "a fresh scrape with blood on

it" on the defendant's finger improperly suggested a fact not in

evidence. "A prosecutor must limit comment in closing statement

to the evidence and fair inferences that can be drawn from the

evidence." Commonwealth v. Cole, 473 Mass. 317, 333 (2015),

quoting from Commonwealth v. Kelly, 417 Mass. 266, 270 (1994).

Contrary to the defendant's assertion, the prosecutor's

description did not introduce a fact not found in evidence.

Rather, it directly reiterated testimony presented at trial. We

discern no error.[2]

---

[2] Sargent Talbot's testimony included the following
exchange:

Q.: "Okay how could you tell the scratch on Mr. Lugo's hand
was fresh?"

A.: "It had fresh blood on it; it had a redness around the
cut itself that led me to believe that it was something
that occurred recently as opposed to something that was a
day or two old."

c.  Burden-shifting.  The defendant objected also to what he characterizes as burden-shifting by the prosecutor.  He contends that, in telling the jury to weigh the defendant's testimony against the testimony of the Commonwealth's witnesses, the prosecutor impermissibly suggested that the defendant has an affirmative duty to produce evidence of his innocence.[3]  A prosecutor may not "make statements that shift the burden of proof from the Commonwealth to the defendant."  Commonwealth v. Johnson, 463 Mass. 95, 112 (2012), quoting from Commonwealth v. Amirault, 404 Mass. 221, 240 (1989).  However, a "prosecutor is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case."  Id. at 113, quoting from Commonwealth v. Feroli, 407 Mass. 405, 409 (1990).  Here, the prosecutor's statement emphasized the discrepancies between the defendant's testimony and the testimony of all the other witnesses.  While the prosecutor's statement, "there is no corroboration for his version," is a type of statement to avoid, the argument as a whole cannot be properly characterized as

---

[3] Commenting on the defendant's credibility, the prosecutor told the jury:

"Think of the interest he has, he's the only evidence; his version is the only evidence that presents him breaking up a fight.  Think of the interest he has in the outcome of the case and why would he want you to believe that version verses [sic] all the other witnesses, all the other evidence you sat through the last couple of days.  I submit to you there is no corroboration for his version."

burden-shifting, but, rather, as a fair comment on the credibility of the defendant. See Commonwealth v. Storey, 378 Mass. 312, 325 (1979), cert. denied, 446 U.S. 955 (1980) ("The prosecutor's objective, as revealed in the context of [her] closing argument, was simply to defend [her] credibility, and that of [her] case, by pointing out contradictions and inconsistencies in the witness's testimony").

d. Independent knowledge of the truth. The defendant argues for the first time on appeal that the prosecutor improperly suggested to the jury that she had independent knowledge of the truth when she asserted that the Commonwealth's witnesses were credible "because they told you what actually occurred."[4] As the defendant did not object to this portion of the closing argument, we review the statement for a substantial risk of miscarriage of justice. See Alphas, 430 Mass. at 13.

"Improper vouching can occur if an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury." Commonwealth v. Wilson, 427 Mass. 336, 352 (1998). Here, consideration of the argument as a whole persuades us that the "prosecutor did not imply that [s]he had 'special knowledge

_____

[4] The prosecutor told the jury: "I submit to you the victims are credible not only because they told you what actually occurred[,] but they are supported by the evidence of the other witnesses."

by which [s]he could verify the witness's testimony.'" Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 189 (2009), quoting from Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989). Rather, her statement was part of an appeal to the jury to draw the reasonable conclusion from the witnesses' conforming testimony that those witnesses should be believed, a proper line of argument where credibility is at issue. See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 52 (2003) (prosecutor's comments did not suggest that she possessed knowledge of facts not contained in evidence).

e. Misstatement of evidence. The prosecutor asserted in closing that the defendant's story was not believable in part because, had he been involved in breaking up a fight as he claimed to have been, "there would be more injuries, there would be more bruising."[5] The defendant now contends that, in light of Sargent Talbot's testimony that bruising takes a day or two to appear, the prosecutor misstated the evidence. We conclude that there was no error. "In closing argument, counsel may argue from the evidence and may argue fair inferences that might be drawn from the evidence. Counsel also may call on the experience and common knowledge of the jury. Moreover, it is proper for counsel to use analogy, example and hypothesis as an

_____

[5] The prosecutor stated: "I submit to you that if he was really breaking up a fight as he would want you to believe, there would be more injuries, there would be more bruising."

aid to effective and aggressive argument." Commonwealth v. Ridge, 455 Mass. 307, 330 (2009) (citations and quotations omitted). See Commonwealth v. Donovan, 422 Mass. 349, 357 (1996) (prosecutor has right to argue inferences from evidence favorable to his case).

f. Use of the term "victim". Referring to Ramos and Henriquez, the prosecutor used the term "victim" eleven times in the course of her closing argument. In view of the judge's allowance of the defendant's motion in limine prohibiting the use of the term in favor of "alleged victim," the prosecutor's use of the term was error. Although defense counsel raised objections to certain other portions of the prosecutor's closing argument, he did not object to her characterization of the witnesses as "victims." Therefore, "the proper standard of review is whether the error[] created a substantial risk of a miscarriage of justice." Commonwealth v. Letkowski, 469 Mass. 603, 617 (2014).

The absence of an objection also guides our analysis as to whether the lapse was prejudicial to the defendant in the circumstances. "We consider . . . the lack of objection at trial as 'some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial.'" Dodgson, 80 Mass. App. Ct. at 313, quoting from Commonwealth v. Lyons, 426 Mass. 466, 471 (1998).

"This is especially true, where, as here, contemporaneous objections were made to the prosecutor's summation." Commonwealth v. Walker, 421 Mass. 90, 104 (1995).

Moreover, in the context of the evidence at trial, any risk of a miscarriage of justice was mitigated by the defendant's stipulation to the fact that Henriquez was stabbed on that occasion by the defendant's friend, Fernandez. Thus, Henriquez's identity as a victim was not in question, only the defendant's culpability in that attack. We are confident that the error, in these circumstances, did not create a substantial risk of a miscarriage of justice.

3. Judge's instruction on prior inconsistent statements. The defendant claims that the judge's instruction on prior inconsistent statements was unclear and failed to provide the jury with a proper understanding of how such statements may be considered. At trial, defense counsel objected to the judge's charge limiting the use of prior inconsistent statements to credibility purposes, and requested, instead, an instruction permitting the jury to consider inconsistent statements made to the grand jury for their substantive value.

The judge's instruction on prior inconsistent statements, though somewhat ambiguous, limits consideration of such statements to credibility purposes:

"If you determine the witness's prior statement differs significantly from his or her present testimony[,] the prior statement is relevant only as to the witness's credibility and you may not take it as any proof of any fact contained in it except in the case of a parties [sic] prior statement."

As a general rule, a trial witness's prior inconsistent statements are not admissible for their substantive truth.  See Mass. G. Evid. § 613(a)(2) (2015).  However, "[w]hen a trial witness offers testimony that is directly inconsistent with that witness's testimony before the grand jury, the inconsistent grand jury testimony may be introduced substantively if certain foundational requirements . . . are met."  Commonwealth v. Santos, 463 Mass. 273, 294 (2012).  See Commonwealth v. Daye, 393 Mass. 55, 75 (1984); Mass. G. Evid. § 801(d)(1)(A) (2015).

Here, defense counsel confronted three of the Commonwealth's witnesses with grand jury statements that he then sought to have considered substantively.[6]  The defendant asserts

---

[6] Defense counsel introduced seven grand jury statements into trial testimony:

(1) Henriquez told the grand jury that while he was engaged in a fight (before the defendant arrived on the scene), he pushed an adversary toward the railing; at trial, he testified that he grabbed the man.

(2) Referring to the defendant and Fernandez, Henriquez told the grand jury, "I was pushing him away, I was trying to push him away so trying to kick" and "basically trying to get him away but they didn't stab me again, they didn't"; at trial, he testified to being stabbed while on the ground, then kicked.

that the prior statements have substantive value because they corroborate his account of events. Accepted for their truth and as substantive evidence, the statements establish that Henriquez was drunk at the time of the attack; he aggressively engaged in a brawl before the defendant arrived on the scene; both the defendant and Fernandez had knives and participated in stabbing Henriquez; besides the defendant and Fernandez, a third man

---

(3) Before the grand jury, Henriquez related that he had reported to a police officer that "[the defendant] was trying to stab me too because at the moment I just seen someone swinging a knife. It felt like they were both trying, they were -- both had knives"; at trial, on redirect, the prosecutor introduced the omitted portion of the grand jury statement, in which Henriquez said: "I was clearing out my thoughts, I believe it was just the one [stabber]."

(4) Henriquez told the grand jury that he was chased by three men, but testified at trial that only the defendant and Fernandez chased him.

(5) Naranjo told the grand jury that Henriquez and an adversary were "both drunk that it wasn't much of a fight, it kind of like pushing and misses and swings"; at trial, he testified, "I don't know how much he [Henriquez] drank so I can't say he was drunk."

(6) Naranjo told the grand jury that, after the first bout of fighting died down, Henriquez and his adversary "started running at each other again, now a bigger scuffle happened"; at trial, he testified that a group of adversaries started pushing Ramos and Henriquez, reigniting the fight.

(7) Swanson told the grand jury that he observed "the victim pulled out by his friend and the other two are sort of on the tail end, they are sort of maybe lightly kicking"; at trial, he described the defendant's kicking as "stomping down with the open soul [sic] of the foot."

chased Henriquez up the garage ramp; once on the ground, Henriquez was not stabbed again; and, when security guards arrived, the defendant and Fernandez were kicking Henriquez lightly. None of these statements, considered for their truth as substantive evidence, benefits the defendant's case. Consequently, "[o]n the record before us, no prejudicial error arose from the judge's decision not to instruct the jury that they could consider prior inconsistent statements for their substantive value." Commonwealth v. Fritz, 472 Mass. 341, 353 (2015).

Finally, for the first time on appeal, the defendant claims that a series of other, unsworn, prior inconsistent statements should also have been considered substantively, and that the judge's instruction to the contrary created a substantial risk of miscarriage of justice.[7] While the defendant is correct in

---

[7] The defendant points to ten prior inconsistent statements made to police or medical personnel:

   (1) Ramos told a police officer that he touched the defendant's shoulder and said, "hey, bud, let's calm this down";

   (2) Ramos also told police that the defendant and Fernandez both stabbed Henriquez;

   (3) and (4) Henriquez, too, told police that both the defendant and Fernandez stabbed him;

   (5) and (6) Henriquez told a police officer that he saw two individuals with knives, and that he distinctly remembered seeing the defendant with a knife;

asserting that prior inconsistent statements may properly be considered for their truth if admitted without objection, see Mass. G. Evid. § 613(a)(2), these statements, considered substantively, do not constitute evidence favorable to the defendant.  The conflicts between trial testimony and prior statements served, rather, to focus the jury's attention on the credibility of the Commonwealth's witnesses.  In view of this, we discern no risk of miscarriage of justice arising from the judge's instruction.

_Judgments affirmed_.

---

(7) Henriquez told a police officer that four to six unknown men initiated the brawl in the parking garage;

(8) and (9) Henriquez's medical records indicted heavy alcohol use and a diagnosis of closed head injury; and

(10) Henriquez told medical personnel that he did not see his assailants.