NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-236

COMMONWEALTH

vs.

WESLY AGUILAR-VALENZUELA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted after a jury trial of operating under the influence of alcohol (OUI) in violation of G. L. c. 90, § 24 (1) (a) (1). A judge of the District Court found the defendant not responsible for a related civil infraction. On appeal, the defendant challenges the admission of testimony by two State police troopers about the defendant's "impairment" and asserts that he was prejudiced when the trial judge did not give a limiting instruction sua sponte about this testimony. We affirm.

Background. On the date in question, troopers with the Massachusetts State police had established a sobriety checkpoint in Springfield. The defendant entered the checkpoint area and,

at a stop sign, encountered the first trooper, a "contact officer," who had a "very short interaction" with the defendant. At trial, this first trooper testified that he had eighteen years of experience with the State police and had been trained in motor vehicle stops, OUI detection, operating under the influence, and standardized field sobriety testing. He testified that the defendant had "red, glassy, bloodshot eyes" and the trooper saw an open beer can in the defendant's lap. The jury saw a video recording from this trooper's body-worn camera (BWC), which was admitted in evidence. The first trooper testified that his role was looking for "[s]igns of impairment," and explained that from "speaking with this operator and having contact with him," the trooper "observed him to have the -- from my training and experience, an indication of impairment or consumption of alcoholic beverages, not impairment, besides the red, glassy, bloodshot eyes, the open beer, [h]e seemed a bit confused handing me his license right away when I didn't ask him for it."

In the screening area, the defendant encountered the second trooper. The second trooper had also been trained in motor vehicle stops and "OUI," presumably the detection thereof. He administered two standardized field sobriety tests to the defendant, the nine-step walk and turn, and the one-legged stand. The second trooper testified that, in administering

2

these tests, he was "looking for impairment," and described various signs or "clues" he had been taught to look for.

The trooper testified that, during the nine-step walk and turn test, the defendant "swayed his arms, he started the test too soon, he stopped in the middle of the test" and he did not stay on the "imaginary line." The second trooper explained that, "to detect impairment," he needed only "two out of the eight" clues, and he had observed four. After describing how he had instructed the defendant on the one-legged stand, the second trooper described how the defendant had dropped his foot at the eighteen-second mark, raised his arms for balance, and swayed his body before putting his foot down. The second trooper explained that there were four clues of impairment in that test and he had seen the defendant exhibit three of them. Throughout the testimony, the prosecutor often framed her questions in terms of "cues" or "clues" or "signs" of "impairment" and the second trooper responded, often using the same terms.

The jury also saw BWC footage of the instructions and the field sobriety tests. On that video, the jury could see the defendant's car, which was parked "slightly at an angle" to the marked parking space in which the defendant was supposed to park.

Discussion. Citing Commonwealth v. Canty, 466 Mass. 535 (2013), the defendant asserts that the conviction rests on

3

improper lay opinion testimony by the two troopers about the "ultimate issue" in the case, namely that the defendant's ability to operate his motor vehicle safely was impaired by alcohol consumption.  We are not persuaded.

Because the defendant did not object to this testimony at trial, we review this claim to determine whether there was error, and if so, whether the error created a substantial risk of a miscarriage of justice.  See Commonwealth v. AdonSoto, 475 Mass. 497, 504 (2016).  In so doing, we ask whether any error was "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error" (citation omitted).  Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

We discern no error here.  A lay witness may "offer his opinion regarding a defendant's level of sobriety or intoxication."  Canty, 466 Mass. at 544.  The defendant makes much of the troopers' use of the word "impairment" to describe the defendant, but "[t]he rule that witnesses in describing conduct should tell what they saw and heard does not foreclose the use of words of summary description," id., quoting Kane v. Fields Corner Grille, Inc., 341 Mass. 640, 647 (1961), and "'[p]robably impaired,' while not a particularly precise phrase, is no worse than many of the alternatives (e.g., 'buzzed,'

4

'tipsy') to describe a modest level of inebriation." Canty, supra.

The question is not whether the troopers used a forbidden word, but whether they opined on "whether the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely" (quotation and citation omitted). Canty, 466 Mass. at 542. Such testimony impermissibly "comes close to an opinion as to whether the defendant is guilty." Id. Having reviewed the challenged testimony, we are satisfied that the judge did not err by not sua sponte striking it, or offering a corrective instruction, or otherwise addressing the testimony in the moment. The witnesses, perhaps following the prosecutor's lead, used "impairment" as a synonym for "inebriation" (or being "buzzed," or "tipsy") and did not opine as to the defendant's ability safely to operate the vehicle. Indeed, defense counsel picked up the nomenclature and used it, too. See Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 313 (2011) (lack of objection some indication that tone and manner of statement did not appear at trial to be as prejudicial as argued on appeal).

Having discerned no error in the testimony, we are similarly unmoved by the assertion that the prosecutor, in her jury addresses, exacerbated any error. It was evident from the testimony and the BWC footage that the second trooper "decided"

5

to arrest the defendant after conducting the field sobriety tests, so the prosecutor's statement of that fact lent little to the jury's consideration.  And, while she used variations of the term "impaired" while describing what the troopers were looking for, the prosecutor stopped short of saying that the troopers' opinions indicated that the defendant was so impaired as not to be able to operate his vehicle safely.  In considering the evidence and argument, we are also mindful that the jury had the benefit of BWC footage reflecting both troopers' interactions with the defendant, and that the judge correctly instructed the jury as to their burdens, both in assigning weight to witness testimony and in weighing other evidence.  The jury were also instructed that questions alone, opening statements, and closing arguments were not evidence.

<u>Judgment affirmed</u>.

By the Court (Rubin, Walsh & Hershfang, JJ.[1]),

Clerk

Entered:  March 16, 2026.

---

[1] The panelists are listed in order of seniority.